IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ABBOTT LABORATORIES and U.S. SUBSIDIARIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-778 T |
| | ) | Judge Allegra |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
GEORGE L. SQUIRES
Attorneys
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587
(202) 514-9440 (facsimile)

# INDEX

**Page**

Defendant's motion for summary judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii
Defendant's brief in support of it's cross-motion for summary judgment and in opposition to plaintiff's motion for partial summary judgment . . . . . . . . . . . . . . . . . . 1
Question presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Argument:

PLAINTIFF WAS NOT PERMITTED TO MAKE A REDETERMINATION OF FSC COMMISSIONS FOR 1987, 1988 AND 1989 ON JUNE 29, 1998, BECAUSE THE ATTEMPTED REDETERMINATION DID NOT AFFECT ITS FSC, IN VIOLATION OF TEMP. TREAS. REG. § 1.925(a)-1T(e)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. *Introduction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

1. *A brief description of the Foreign Sales Corporation (FSC) regime–one of several successive legislative schemes designed to stimulate U.S. exports through tax incentives* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. *The FSC Regime authorized complex formulae to determine foreign trade income of a FSC, and allowed a qualifying domestic manufacturer to exempt from taxation about 65 percent of the foreign trade income earned by its FSC* . . 9

B. *On June 29, 1998, Plaintiff Was Not Entitled to Redetermine FSC Commissions Payable to ATCI for 1987-1989 Because by Then a Redetermination Could Not Affect ATCI, As Required by Temp. Treas. Reg. § 1.925(a)-1T(e)(4), in Order for a Taxpayer to Be Permitted to Redetermine a FSC Commission* . . . . . . . . . . . . . . . . . . *12*

1. *Temp. Treas. Reg. § 1.925(a)-1T(e)(4) conditioned permission for a taxpayer to make a subsequent determination of FSC commission on (a) the periods for filing claims under § 6511 remaining open for both the FSC and the "related supplier" at the time the redetermination was made; and also on (b) any redetermination affecting both the FSC and the "related supplier"* . . . 12

2. *The plain language of the 6th sentence in Treas. Reg. § 1.925(a)-1T(e)(4), that any redetermination of FSC commission payable "shall affect both the FSC and the related supplier," clearly requires a redetermination to be made before expiration of the assessment statute applicable to the entity whose taxable income will increase (i.e., will be "affected") as a result* . . . . . . 17

3. *Plaintiff's construction of the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) vitiates what plaintiff admits is the basic principle of the entire regulation–"that any changes to the amount of FSC commission expenses paid by a related supplier should correspond with changes to income received by a FSC."* . . . . . . . . . . 19

4. *In Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998), the Commissioner Did Not Concede, as Plaintiff Contends, That Temp. Treas. Reg. § 1.925(a)-1T(e)(4) Permits a Related Supplier to Determine Upward FSC Commissions Payable Even if the Statute of Limitations on Assessments Against the FSC Has Expired* . . . . . . . . . . 22

Conclusion . . . . . . . . . . 25

Appendix (Filed Separately):

**TABLE OF AUTHORITIES**

**Cases**:

*Ewing v. United States*, 914 F.2d 499 (4th Cir. 1990) . . . . . . . . . . 18

*Foster v. Commissioner*, 80 T.C. 34 (1983), *aff'd. in part, vacated in part,* 756 F.2d 1430 (9th Cir. 1985), *cert. denied,* 474 U.S. 1055 (1986) . . . . . . . . 14, 21

*General Dynamics Corp. v. Commissioner*, 108 T.C. 107 (1997) . . . . . . . . . . 10

*Union Carbide Corp. v. Commissioner*, 110 T.C. 275 (1998) . . . . . . . . 10, 15, 18, 22-24

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.) as amended through 1989:

§ 114 . . . . . . . . . . 8
§ 291 . . . . . . . . . . 10
§ 482 . . . . . . . . . . 8-10, 13, 14, 20, 21
§ 921 . . . . . . . . . . 7, 9
§ 922 . . . . . . . . . . 2, 3
§ 923 . . . . . . . . . . 8, 9
§ 924 . . . . . . . . . . 3, 9, 10
§ 925 . . . . . . . . . . 2, 8-12, 14, 20

**Statutes:** **Page**

§ 927 . . . . . . . . . . 3, 7-9, 14
§ 941 . . . . . . . . . . 8
§ 943 . . . . . . . . . . 8
§ 992 . . . . . . . . . . 7
§ 6401 . . . . . . . . . . 17
§ 6501 . . . . . . . . . . 3-6, 13, 14, 17, 19, 21-23
§ 6511 . . . . . . . . . . 5, 6. 12, 13, 15, 19, 22, 23

Treasury Regulations (26 C.F.R.) as amended through 1989:

§ 1.482-1(a) . . . . . . . . . . 9, 14, 20
§ 301.6402-1 . . . . . . . . . . 17

Temporary Treasury Regulations (26 C.F.R.) as amended through 1989:

§ 1.921-1T(a) A-1 . . . . . . . . . . 7
§ 1.925(a)-1T(a) . . . . . . . . . .
§ 1.925(a)-1T(c) . . . . . . . . . . 11
§ 1.925(a)-IT(d) . . . . . . . . . . 9, 11
§ 1.925(a)-1T(e) . . . . . . . . . . 2, 6, 12-14, 17, 19, 23, 24
§ 1.925(b)-1T(a) . . . . . . . . . . 2
§ 1.925(b)-1T(b) . . . . . . . . . . 2
§ 1.927(d)-2T(a) . . . . . . . . . . 1, 8, 9
§ 1.927(d)-2T(b) . . . . . . . . . . 1, 8, 9

**Miscellaneous:**

Charles M. Bruce and Edward J. Lieberman, *Foreign Sales Corporations*, Tax Management Portfolio No. 934, A1-A4, A691), Tax. Mgmt. (BNA). . . . . . . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ABBOTT LABORATORIES and U.S. SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-778 T |
| | ) | Judge Allegra |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of this Court, defendant, the United States, respectfully moves the Court for summary judgment in its favor on the grounds that there are no genuine issues of material fact that would preclude entry of judgment, and that the Government is entitled to judgment as a matter of law.

In support of this motion, the United States relies on the complaint, Defendant's Proposed Findings of Uncontroverted Fact, and the attached brief.

WHEREFORE, the Government respectfully requests that this Court grant summary judgment in favor of the United States, dismiss the complaint with prejudice, and award costs to the United States.

Respectfully submitted,

June 22, 2007

s/George L. Squires

GEORGE L. SQUIRES
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

June 22, 2007

s/Mary M. Abate
Of Counsel

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-778 T
Judge Allegra

ABBOTT LABORATORIES and
U.S. SUBSIDIARIES,

Plaintiff,

v.

UNITED STATES,

Defendant.

**BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This is an action brought by Abbott Laboratories and U.S. Subsidiaries[1/] for the recovery of $10,625,977 total federal income tax paid for the taxable calendar years 1987, 1988, and 1989, plus assessed and statutory interest.

QUESTION PRESENTED

During 1987, 1988, and 1989, Abbott Laboratories exported products through Abbott Trading Company, Inc. ("ATCI"), its foreign sales corporation ("FSC") within the meaning of

[1/] Hereinafter, Abbott Laboratories and U.S. Subsidiaries will be referred to as "plaintiff," "Abbott Laboratories," "Abbott," or "related supplier." The term "related supplier" is defined in Temp. Treas. Reg. § 1.927(d)-2T.

§ 922(a),[2/] acting as commission agent. On their respective original income tax returns, Abbott Laboratories deducted and ATCI reported as income foreign sales corporation (FSC) commissions which Abbott calculated under the safe-harbor administrative pricing methods in 26 U.S.C. § 925(a)(2) and (b), and Temp. Treas. Regs. §§ 1.925(a)-1T and 1.925(b)-1T, as the maximum commissions payable. On June 29, 1998, six months after expiration of the statute of limitations within which the Commissioner was permitted to assess federal income tax against ATCI for 1987, 1988, and 1989 (but within the period of limitations for filing refund claims), Abbott filed income tax refund claims for 1987, 1988, and 1989, on the ground that Abbott was entitled to larger deductions for FSC commissions payable to ATCI than Abbott and ATCI had reported in their original returns.

The question before the Court (an issue of first impression) is whether, because the additional FSC commission income attributable to the additional commission deductions claimed by Abbott for 1987, 1988, and 1989 could not be assessed against ATCI on and after June 29, 1998, Abbott is precluded from making a redetermination of (increasing) its commission deductions under Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which imposes as a condition for the redetermination of commissions payable, after the FSC has filed its original return, that the "redetermination shall affect both the FSC and the related supplier."

STATEMENT OF THE CASE

This is an action filed in the United States Court of Federal Claims on November 11, 2006, pursuant to 26 U.S.C. § 7422 and 28 U.S.C. § 1491, by Abbott and members of its affiliated group

---

[2/] Unless otherwise indicated, "§" and "section" refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended through 1989.

of corporations to recover alleged overpayments of income tax and interest, plus interest provided by law, for calendar years 1987, 1988 and 1989. (Defendant's Proposed Findings of Uncontroverted Fact ("DPF") 1.) During the years in suit, *Abbott* was an Illinois corporation with its principal offices in Illinois. (DPF 2.) Abbott timely filed its original consolidated federal income tax returns on Forms 1120 for calendar years 1987, 1988, and 1989. (DPF 3.) On those returns, Abbott claimed deductions for commission expenses associated with export sales that generated "foreign trading gross receipts," as defined by 26 U.S.C. § 924(a). (DPF 4.) On or about February 14, 1992, August 31, 1993, October 11, 1994, March 30, 1995, September 26, 1995, September 17, 1996, November 10, 1997, and April 22, 1998, Abbott filed Forms 872, Consent to Extend the Time to Assess Tax, with respect to each of the years in suit, ultimately agreeing in accordance with 26 U.S.C. § 6501(c)(4) to extend the date within which the Commissioner could assess additional income tax against *Abbott* for tax years 1987, 1988, and 1989 through *September 30, 1998*. (Complaint ¶ 6 & Ex. A-H.) (DPF 5.)

During the years in suit, *ATCI* was a U.S. Virgin Islands corporation, all of whose stock was owned by Abbott Laboratories. (DPF 6.) In accordance with 26 U.S.C. §§ 922(b) and 927(f)(1) for the years in suit, ATCI elected to be treated as a foreign sales corporation (FSC) for federal income tax purposes. (DPF 7.) For the years in suit, ATCI was not a member of Abbott Laboratories's affiliated group. (DPF 8.) For each of the years in suit, ATCI filed its own separate federal income tax return on Form 1120-FSC. (DPF 9.) On its original FSC returns, ATCI computed its FSC commission as 23 percent of Abbott's combined taxable income in relation to Abbott's export sales by division. ATCI reported its taxable income on its original FSC returns as 8/23 of this FSC commission. (DPF 10.) On its original income tax returns ATCI

calculated the FSC commission payable to ATCI by broadly "grouping" transactions by product group. (DPF 11.) On or about February 14, 1992, August 31, 1993, October 11, 1994, March 30, 1995, September 26, 1995, and September 17, 1996, ATCI filed Forms 872, Consent to Extend the Time to Assess Tax, with respect to each of the years in suit, ultimately agreeing in accordance with 26 U.S.C. § 6501(c)(4) to extend the date within which the Commissioner could assess additional income tax against *ATCI* for calendar tax years 1987, 1988, and 1989 through *December 31*, *1997*. (DPF 12.)

On June 29, 1998, *Abbott* filed Forms 1120X ("Amended U.S. Corporation Income Tax Return") in which it claimed tax refunds based on the following claimed increases in deductions for FSC commissions, reductions in taxable income, and income tax overpayments for 1987, 1988, and 1989--all "due to a redetermination of the Foreign Sales Corporation (FSC) commissions" (DPF 13):

| | 1987 | 1988 | 1989 |
|---|---|---|---|
| increase deduction for FSC commission | $ 6,354,591 | $ 9,350,873 | $ 14,435,229 |
| reduction of taxable income | $ 6,354,591 | $ 9,350,873 | $ 14,435,229 |
| overpayment of income tax | $ 2,538,702 | $ 3,179,297 | $ 4,907,978 |

Also on June 29, 1998, *ATCI* filed letters under penalties of perjury with the IRS, asserting additional FSC commission income for 1987, 1988, and 1989.[3/] In those letters, ATCI reported the following (DPF 14):

[3/] Defendant makes this admission solely for the purpose of this Court's considering the parties' cross-motions for summary judgment. In the event this case is not disposed of on summary judgment, defendant reserves the right to require plaintiff to prove the truth of this allegation, which was averred in ¶ 41 of its complaint and in Plaintiff's Proposed Finding of Uncontroverted Fact No. 16.

| | 1987 | 1988 | 1989 |
|---|---|---|---|
| Total commission payable to ATCI | $51,849,517 | $79,651,168 | $96,546,567 |
| Total non-exempt foreign trade income | $18,034,817 | $27,705,066 | $33,581,792 |
| Increase in taxable income | $ 2,210,316 | $ 3,252,514 | $ 5,021,005 |

The key statute of limitations ("SOL") dates, the dates when Abbott submitted its amended returns (refund claims) as to 1987, 1988, and 1989 asserting additional deductions for FSC commissions payable to ATCI, and the dates when ATCI filed its letters asserting additional FSC commission income for 1987, 1988, and 1989 are as follows (DPF 15):

| | Abbott Laboratories (related supplier) | ATCI (FSC) |
|---|---|---|
| expiration of SOL for assessment of federal income tax ("FIT") for 1987, 1988, & 1989 (§6501(a)) | 9-30-98 | 12-31-97 |
| expiration of SOL for filing refund claim of FIT for 1987, 1988 & 1989 (§6511) | 3-30-99 | 6-30-98 |
| Date refund claim & letters filed as amended returns re FIT for 1987, 1988 & 1989 | 6-29-98 | 6-29-98 |

Thus, Abbott's claims were filed (on June 29, 1998) six months after the assessment statute applicable to ATCI expired, and one day before the expiration of the statute of limitations for filing claims that was applicable to ATCI. On December 2, 2004, the IRS denied Abbott's claims for refund for 1987, 1988, and 1989. (DPF 16.)

## ARGUMENT

### PLAINTIFF WAS NOT PERMITTED TO MAKE A REDETERMINATION OF FSC COMMISSIONS FOR 1987, 1988 AND 1989 ON JUNE 29, 1998, BECAUSE THE ATTEMPTED REDETERMINATION DID NOT AFFECT ITS FSC, IN VIOLATION OF TEMP. TREAS. REG. § 1.925(a)-1T(e)(4)

#### A. *Introduction*

As a preliminary matter, it is necessary to clarify just what is at issue in this case. Plaintiff characterizes the issue as whether Abbott's claims for refund for 1997 through 1999 were "timely . . . under § 6511." (Plt. Br. 3.) A substantial portion of plaintiff's brief is devoted to arguing that the claims met the requirements of § 6511, that there are no express or implied exceptions to § 6511, and that the assessment statute (§ 6501) should not be read into § 6511. But § 6511 has nothing to do with the issue presented on the parties cross-motions, since we do not disagree that the refund claims filed by Abbott on June 29, 1998, complied with the time requirements of § 6511. Section 6511 is only tangentially involved, if at all, insofar as Abbott's claims were filed within the § 6511 limitations periods applicable to both Abbott and ATCI, and thus met one (but only one) of the requirements of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which governs the issue in this case and is discussed below.

The issue at hand is whether Abbott's attempted redetermination of commissions payable to ATCI during the years in suit met a second requirement of Temp. Treas. Reg. § 1.925(a)-1T(e)(4)–*i.e.*, that the redetermination affect both Abbott and ATCI (*i.e.*, that it be made within the period within which additional tax could be assessed against the entity whose tax liability would be increased as a result of the redetermination).

1. *A brief description of the Foreign Sales Corporation (FSC) regime--one of several successive legislative schemes designed to stimulate U.S. exports through tax incentives*

The Foreign Sales Corporation Regime is the second of three sequentially-enacted, tax-advantaged schemes, which were devised to stimulate exports by United States manufacturers. All of them have been repealed following adverse rulings by the World Trade Organization. Charles M. Bruce and Edward J. Lieberman, *Foreign Sales Corporations*, Tax Management Portfolio No. 934, A1-A4, A691), Tax. Mgmt. (BNA).

The first tax incentive regime for stimulating exports by United States manufacturers was the Domestic International Sales Corporation (DISC) regime. It was created by §501 of the Revenue Act of 1971, Pub. L. No. 92-178, 85 Stat. 497, which added §§ 991-997 to the Internal Revenue Code of 1954. It permitted a domestic subsidiary, which handled export sales and leasing activities for its domestic parent, to elect DISC status and thereby become tax exempt, with approximately half of its DISC earnings taxed currently to its parent as constructive dividends, and the remainder of the earnings not taxed to the shareholder until actually distributed, or until the shareholder actually distributed his DISC stock in a taxable transaction, or until the corporation failed to qualify as a DISC. After 1976, the tax deferral benefits were limited to qualified export receipts in excess of 67 percent of average gross receipts of the DISC for a 4-year base period. As an incentive for exports, the DISC regime ended in 1984. § 992(a); Treas. Reg. § 1.921-1T(a) A-1.

The second regime, the FSC regime, was enacted by § 801(a) of the Deficit Reduction Act of 1984, Pub. L. No. 98-369, 98 Stat. 494, which added §§ 921-927 to the Internal Revenue Code of 1954. Under this tax regime, a U. S. manufacturer was permitted to create a FSC through which

to export products it made in the United States. The U.S. manufacturer (known as the related supplier[4/]) was permitted to deduct commissions, determined by formula, paid or payable to its FSC[5/] in connection with the FSC's "foreign trading gross receipts," which were generated by a FSC's sales of qualified "export property." If the safe-harbor administrative transfer pricing rules of § 925 [6/] were used, the FSC would be entitled to exclude 16/23 of its net income (including FSC commissions), and would be taxable on the rest. § 923(a)(3). On November 15, 2000, the FSC Repeal and Extraterritorial Income Exclusion Act, Pub. L. No. 106-519, 114 Stat. 2423, was enacted. Section 2 of the Act repealed the FSC regime as of September 30, 2000.

The third regime, the Extraterritorial Income Exclusion regime, was created by the FSC Repeal and Extraterritorial Income Exclusion Act of 2000, which added §§ 114, and 941-943 to the Internal Revenue Code of 1986. The Act provided an exclusion from gross income of a percentage of income attributable to certain activities performed outside the United States. This regime was repealed for transactions after 2004 by the American Jobs Creation Act of 2004, Pub. L. No. 108-357.

---

[4/] Section 927(e)(1); Temp. Treas. Reg. § 1.927(d)-2T.

[5/] Temp. Treas. Reg. § 1.925(a)-1(e)(3)(I).

[6/] "Safe-harbor" refers to the transfer pricing rules in § 925(a)(1) and (2), which are exempted from the requirement in § 482 that transfer prices between or among entities under common control reflect those reached between or among unrelated parties dealing at arms-length.

2. *The FSC Regime authorized complex formulae to determine foreign trade income of a FSC, and allowed a qualifying domestic manufacturer to exempt from taxation about 65 percent of the foreign trade income earned by its FSC*

Under the FSC regime, a considerable portion of the FSC's income was exempted from income taxation by the United States. Section 921 did this by providing that a FSC's exempt foreign trade income "shall be treated as foreign source income which is not effectively connected with the conduct of a trade or business within the United States." Section 923(a)(3) exempted 16/23 of the foreign trade income[7/] determined under the administrative pricing rules of §§ 925(a)(1) and (a)(2), which the FSC and the related supplier[8/] were permitted to use as safe

[7/] Section 923(b) defines "foreign trade income" as "the gross income of a FSC attributable to foreign trading gross receipts." In the case of a commission FSC, "foreign trade income" is synonymous with the FSC "commission," being the gross income of the FSC attributable to "gross receipts from the sale of export property ... by any principal for whom the FSC acts as a commission agent ...," Temp. Treas. Reg. § 1.924(a)-1T(b), paid or payable by the related supplier. TR 1.925(a)-1T(d)(2)(iv) and 1.927(b)-1T(e)(1).

[8/] For purposes of §§ 921-927 and the regulations thereunder, Treas. Reg. § 1.927(d)-2T(a) defines "related supplier" as–

> a related party which directly supplies to a FSC any property or services which the FSC disposes of in a transaction producing foreign trading gross receipts, or a related party which uses the FSC as a commission agent in the disposition of any property or services producing foreign trading gross receipts. . . .

A "related party" is defined as "a person which is owned or controlled directly or indirectly by the same interests as the FSC within the meaning of section 482 and § 1.482-1(a)." Treas. Reg. § 1.927(d)-2T(b).

harbor pricing methods in lieu of the rules prescribed in § 482.[9/] The effective exclusion rate is reduced to 15/23, or about 65 percent, for years after December 31, 1984. § 291(a)(4).

Section 925(a) provided:

> In the case of a sale of export property to a FSC by a person described in section 482, the taxable income of such FSC and such person shall be based upon a transfer price which would allow such FSC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceed the greatest of . . . .

Section 925(b)(1) charged the Treasury Secretary with prescribing regulations setting forth transfer pricing rules in the case of commissions and certain other income items that were consistent with the limitations imposed by subsection (a). *Union Carbide Corp. v. Commissioner*, 110 T.C. 275, 383 (1998) (citing *General Dynamics Corp. v. Commissioner*, 108 T.C. 107, 118 (1997).

A commission FSC was entitled to earn sales commissions on foreign trading gross receipts[10/] equal to the amounts actually charged, subject to the rules provided in § 482

---

[9/] Section 482 provides:

> In any case of two or more organizations, trades, or businesses, whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. In the case of any transfer (or license) of intangible property (within the meaning of section 936(h)(3)(B), the income with respect to such transfer or license shall be commensurate with the income attributable to the intangible.

[10/] In general, "foreign trading gross receipts" are the gross receipts of a FSC derived from the sale, lease, or rental, or services related and subsidiary to the sale, lease, or rental of "export property." § 924(a)(1), (2), and (3).

(§ 925(a)(3)), or the greater of the amounts computed under two general safe-harbor "administrative pricing" methods–(1) 1.83 percent of foreign trading gross receipts derived from the sale of export property by the FSC (§ 925(a)(1)); and (2) 23 percent of combined taxable income of the FSC and the related supplier attributable to foreign trading gross receipts derived from the sale of export property by the FSC (§ 925(a)(2)). A U.S. manufacturer (related supplier) that paid a commission to its FSC to sell qualified product was permitted to reduce its own income by the amount of allowable commissions paid, and the FSC was required to include that commission in its income. ATCI, Abbott Laboratories' FSC, chose the second of these general administrative pricing methods–the combined taxable income method.

In the case of a commission FSC and its related supplier, the combined taxable income from the transaction was the excess of the related supplier's gross receipts from the transaction, which would have been foreign trading gross receipts had the sale been made by the FSC directly over the total costs of both the related supplier and FSC, excluding the commission paid or payable to the FSC. Temp. Treas. Reg. § 1.925(a)-1T(d)((2)(iii). The total FSC commissions for the year would be the sum of these commissions determined for each group of transactions or for each transaction such as would limit the taxable income of the FSC to no more than 23 percent of the combined taxable income of it and its related supplier.

The determination of the FSC commission could be made on a transaction by transaction basis, or at the taxpayer's election it could be made to group transactions with respect to one product, product line, or standard industrial classification code. Temp. Treas. Reg. § 1.925(a)-1T(c)(8)(I), (ii). An election could be made to group transactions with respect to one product and to use the transaction by transaction method for another product, all within the same taxable year.

Temp. Treas. Reg. § 1.925(a)-1T(c)(8)(iii). In addition, these grouping choices could be changed from year to year. On their original tax returns Abbott Laboratories and ATCI calculated the FSC commission payable to ATCI by broadly "grouping" transactions by product group. (Complaint ¶ 25.)

In addition to providing rules (including the foregoing ones) for determining FSC transfer prices and commissions for a transaction before income tax returns are filed, the Secretary also prescribed rules in Treas. Reg. § 1.925(a)-1T(e)(4) for making subsequent determinations of transfer prices and FSC commissions after original returns had been filed. It is this set of rules that is the focus of both plaintiff's motion for partial summary judgment and defendant's cross-motion for summary judgment.

B. *On June 29, 1998, Plaintiff Was Not Entitled to Redetermine FSC Commissions Payable to ATCI for 1987-1989 Because by Then a Redetermination Could Not Affect ATCI, As Required by Temp. Treas. Reg. § 1.925(a)-1T(e)(4), in Order for a Taxpayer to Be Permitted to Redetermine a FSC Commission*

1. *Temp. Treas. Reg. § 1.925(a)-1T(e)(4) conditioned permission for a taxpayer to make a subsequent determination of FSC commission on (a) the periods for filing claims under § 6511 remaining open for both the FSC and the "related supplier" at the time the redetermination was made; and also on (b) any redetermination affecting both the FSC and the "related supplier"*

Temp. Treas. Reg. § 1.925(a)-1T(e)(4) ("Subsequent determination of transfer price, rental income or commission") provided the following rules for making subsequent determinations of FSC transfer prices and commissions. For convenience, they are set forth below in individually numbered sentences:

> [1] The FSC and its related supplier would ordinarily determine under section 925 and this section the transfer price or rental payment payable by the FSC or the commission payable to the FSC for a transaction before the FSC files its return for the taxable year of the transaction.

> [2] After the FSC has filed its return, a redetermination of those amounts by the Commissioner may only be made if specifically permitted by a Code provision or regulations under the Code.
>
> [3] Such a redetermination would include a redetermination by reason of an adjustment under section 482 and the regulations under that section or sections 861 and § 1.861-8 which affects the amounts which entered into the determination.
>
> [4] In addition, a redetermination may be made by the FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511, if they determine that a different transfer pricing method may be more beneficial.
>
> [5] Also, the FSC and related supplier may redetermine the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and related supplier's profits under the transfer pricing methods.
>
> [6] Any redetermination shall affect both the FSC and the related supplier.
>
> [7] The FSC and the related supplier may not redetermine that the FSC was not operating as a commission FSC rather than a buy-sell FSC, and vice versa.

*Sentence No. 1* of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) provides that in the ordinary course the FSC and its related supplier would determine the transfer price or rent payable by the FSC or the commission payable to the FSC for a transaction before the FSC files its original federal income tax return for the taxable year of the transaction.

*Sentences Nos. 2 and 3* provide rules applicable to the Internal Revenue Service (IRS) for redetermining transfer price, rental income, or commission after the FSC and its related supplier filed their original federal income tax returns. *Sentence No. 2* provides that IRS is only permitted to redetermine the transfer price, rental income, or commission within the time allowed by the Internal Revenue Code or Treasury Regulations for assessing additional income tax against the FSC or its related supplier. Section 6501(a) provides the general rule that the Commissioner may assess income tax within 3 years of the date when the return was due, if it was filed before then, or

within 3 years of the date when the return was actually filed. Section 6501(c)(4) adds that the period for making an assessment may be extended by agreement entered into before expiration of the period for making an assessment.[11/] Section 6501(e)(1) allows the Commissioner 6 years to make an assessment if the taxpayer omitted from his income tax return at least 25 percent of gross income. *Sentence No. 3* permits the IRS to apply § 482 ("Allocation of Income and Deductions Among Taxpayers"), and regulations thereunder, and § 861("Income from Sources Within the United States"), and Treas. Regs. § 1.861-8 ("Computation of taxable income from sources within the United States and from other sources and activities") for redetermining transfer price, rental income, or commission after the FSC and its related supplier filed their original federal income tax returns.[12/] *See also* § 927(e)(1) ("Source Rules For Related Persons").[13/]

*Sentences Nos. 4 through 7* provide rules applicable to a FSC and its related supplier for redetermining transfer price, rental income, or commission *after* they filed their original federal income tax returns. *Sentence Nos. 4 and 5* permit a FSC and its related supplier to redetermine transfer prices, rental income, FSC commissions, costs and expenses, and even permits them to use a different pricing method, provided they do so together and within the period provided by § 6511

---

[11/] In this case, Abbott Laboratories and IRS agreed that assessments against Abbott for 1987, 1988, and 1989 could be made through September 30, 1998. (Complaint ¶ 6 and Exhibits A-H.) ATCI (the FSC) and IRS agreed that an assessment against ATCI for 1987, 1988, and 1989 could be made through December 31, 1997. (Complaint ¶ 8; Exhibits I-N.)

[12/] However, FSC commissions determined under the safe-harbor administrative pricing rules are exempt from scrutiny under § 482.

[13/] As previously noted, § 925(a)(1) and (2) permit certain taxpayers to elect to use the safe-harbor administrative pricing rules as an exception to § 482. Except as permitted by Temp. Treas. Reg. § 1.925(a)-1T(e)(4), taxpayers subject to § 482, such as Abbott Laboratories and ATCI, may not unilaterally redetermine matters of transfer pricing. Treas. Reg. § 1.482-1(b)(3); *Foster v. Commissioner*, 80 T.C. 34, 191-93 (1983), *aff'd. in part, vacated in part*, 756 F.2d 1430 (9th Cir. 1985), *cert. denied*, 474 U.S. 1055 (1986).

for filing a tax refund claim. *Union Carbide*, 110 T.C. at 386-87. Section 6511(a) provides the general rule that a taxpayer may file a claim for credit or refund of an overpayment of tax within 3 years of when the return was filed or within 2 years of when the tax was paid. Section 6511(c)(1) adds that if an agreement is made to extend the period within which an assessment can be made, the period for filing a claim is extended to 6 months after the period within which an assessment may be made.[14/]

*Sentence No. 6* provides: " Any redetermination shall affect both the FSC and the related supplier." It is discussed in more detail in the following section of this brief. *Sentence No. 7* prohibits a FSC and its related supplier from redetermining that the FSC was operating as a commission FSC rather than a buy-sell FSC, and vice-versa.

In short, after the FSC and its related supplier file their original returns, but before expiration of the statutes of limitations for filing tax refund claims and for assessing additional tax against the taxpayer whose income tax liability would be increased as a result of the redetermination, the FSC and the related supplier are permitted to change together from one transfer pricing method to another and to redetermine the amounts of foreign trading gross receipts and costs and expenses used to determine the FSC's and the related supplier's profits. But the FSC and the related supplier are *not* permitted to--

[14/] As a result of the agreement between Abbott Laboratories and IRS that assessments for 1987, 1988, and 1989 could be made against Abbott through September 30, 1998, § 6511(c)(1) allowed Abbott Laboratories to file claims for credit or refund for those years through March 30, 1999. ATCI did not file any claims for credit or refund for 1987, 1988, or 1989.

(1) Change the nature of their relationship–as from buyer/seller to seller/commission sales agent, or from seller/commission sales agent to buyer/seller, after they file their original returns;

(2) Make a redetermination of the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and the related supplier's profits that affects only one of them after they file their original returns;

(3) Make a redetermination of the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and the related supplier's profits after expiration of the period allowed for either of them to file a claim for refund after they file their original returns; or

(4) Make a redetermination of the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and the related supplier's profits, after expiration of the period allowed for the Commissioner to assess additional tax against the party whose income tax liability would be increased as a result of the redetermination.

2. *The plain language of the 6th sentence in Treas. Reg. § 1.925(a)-1T(e)(4), that any redetermination of FSC commission payable "shall affect both the FSC and the related supplier," clearly requires a redetermination to be made before expiration of the assessment statute applicable to the entity whose taxable income will increase (i.e., will be "affected") as a result*

*Sentence No. 6* in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) mandates: " Any redetermination shall affect both the FSC and the related supplier." This requirement necessarily incorporates the restriction that the FSC and its related supplier must make any redetermination before the time has expired within which the Commissioner is permitted to assess tax against the party whose income

tax liability would be increased as a result of the redetermination. This is because a redetermination cannot *affect* both the FSC and the related supplier, as required by the 6th sentence, unless the tax liability of each is changed by the redetermination.

An upward redetermination of FSC commission expense should affect the related supplier by reducing (as a consequence of an increase in a deductible business expense item) its taxable income, resulting in an overpayment of tax which would be refunded or credited; and the same redetermination should correspondingly affect the FSC by increasing (as a consequence of an increase in an item of income) its taxable income resulting in an underpayment of tax, which would be assessed and collected. But this cannot happen if the period within which the Commissioner is permitted to assess a tax liability against the FSC has expired. This is so because the Commissioner cannot assess tax after the statute of limitations for making an assessment has expired, and the Commissioner cannot maintain a proceeding in court to collect unpaid tax that has not lawfully been assessed. § 6501(a). Any amount of any internal revenue tax that is assessed or collected after expiration of the statute of limitations for making assessments is an overpayment of tax. § 6401(a). An overpayment of tax that the IRS does not apply to an outstanding liability for tax, interest, additional amount, addition to tax, assessable penalty, or to liability for debt owed to federal agency is refundable. Treas. Reg. § 301.6402-1. *Ewing v. United States*, 914 F.2d 499, 504 (4th Cir. 1990).

Abbott acknowledges this point, noting (Pl. Br. 13):

> The limitation contained in section 6501 acts as an absolute bar to the government's ability to assess a tax after the expiration of that period. Even if a taxpayer pays a tax voluntarily after the 6501 Assessment Period expires, the government may not assess those additional taxes and is generally obligated to refund them to the taxpayer. Ewing v. United States, 914 F.2d 499, 504 (4th Cir. 1990).

There is thus no disagreement between the parties that, when (approximately a decade after the years in issue, on June 29, 1998) Abbott filed the claims for refund in which it attempted to make an upward redetermination of its FSC commissions payable to ATCI, claiming entitlement to additional deductions for 1987, 1988, and 1989, after ATCI's assessment statute had run, the filing of letters by ATCI on the same date to "report" the additional income for those years had no effect on its tax liability. Under the only plausible meaning of Sentence No. 6, therefore, the attempted redetermination did not affect ATCI, and the attempted redetermination could not be made. As the Tax Court observed in *Union Carbide*, 110 T.C. at 383-84, "[r]egulations that are valid exercises of the powers of the Secretary have the force and effect of law. . . . When construing a statue or a regulation, courts are to give effect to its plain and ordinary meaning unless doing so would produce absurd or unreasonable results." (Citations omitted.)

3. *Plaintiff's construction of the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) vitiates what plaintiff admits is the basic principle of the entire regulation–"that any changes to the amount of FSC commission expenses paid by a related supplier should correspond with changes to income received by a FSC."*

Although Abbott acknowledges that Sentence No. 6 of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) encapsulates a basic principle of the FSC tax regime--maintaining symmetry between commissions deducted by a related supplier and commissions reported as income by its FSC–Abbott essentially contends that symmetry has nothing to do with tax liability:

> Taken in context of the entire regulation, the "shall affect" sentence [the 6th sentence in Treas. Reg. § 1.925(a)-1T(e)(4)] merely sets forth the basic principle that any changes to the amount of FSC commission expenses paid by a related supplier should correspond with changes to the income received by a FSC . . . .
>
> * * *

> Viewed in context, then, the "shall affect" sentence provides that such redeterminations of FSC commission expense by a related supplier should also result in a correlative redetermination of commission income by the FSC. Nothing more.

(Pl. Br. 20.) This proposition is absurd. "Viewed in context," and taken to its logical conclusion, such an interpretation would necessarily obtain as well with respect to the first condition of Temp. Treas. Reg. § 1.925(a)-1T(e)(4)–Sentence No. 4–that requires a redetermination to be made before the expiration of the § 6511 statutes of limitations for both the FSC and the related supplier to file refund claims. Under Abbott's analysis, the § 6511 requirement would serve the purpose of promoting symmetry between changes to commissions received by the FSC and paid by the related supplier, but would not result in a tax overpayment (read refund) to either.

Plaintiff's example of an unrelated bakery and restaurant to show the supposed absurdity of the Government's position–that the symmetry advanced by the regulation requires concomitant *tax* effects on both related supplier and FSC–borders on the outrageous. The fact that Abbott and ATCI do not file consolidated returns has no bearing on whether they are "related" for purposes of the FSC provisions.[15/] The FSC regulations restrict use of the safe-harbor administrative pricing rules to FSCs and related suppliers that are *by definition related entities, and FSC commissions*

[15/] At pages 15-16, plaintiff argues that just as a restaurant is allowed to amend its tax return within the period permitted by § 6511 to correct an error in the amount it erroneously reported it had paid an unrelated bakery for bread, even if the bakery does not amend its return to make a correlative correction to its income in time for the IRS to assess additional tax against the bakery, so also Abbott should be able to amend its tax return to correct an "error" of FSC commission expense even if its FSC does not amend its return to make a correlative correction to its income, and even if the limitations period for assessing the FSC has expired. Abbott asserts that from a federal tax perspective, it and its FSC are little different than those two wholly unrelated taxpayers, with the explanation that they are not members of a consolidated group under §§ 1501-1505. Like the unrelated restaurant and bakery, Abbott argues, it has a right to claim a refund under § 6511 despite the expiration of the § 6501 period applicable to ACTI.

*determined under the safe-harbor administrative pricing rules are not arm's length.*[16/] Moreover, Abbott elected to determine FSC commissions under a safe-harbor administrative pricing rule in § 925(a), an election that is reserved by § 925(a) for use only by taxpayers that are "related" under § 482. Section 482 provides that it applies to "organizations, trades, or businesses (whether or not incorporated, whether or not organized in the united States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests. . . ."[17/] As a general rule, taxpayers who are described by § 482 are not permitted to "redetermine" transfer prices after they have filed their original returns. If a correction is to be made, it must be made by the Commissioner, not the taxpayer. Treas. Reg. § 1.482-1(a)(3); *Foster v. Commissioner*, 80 T.C. 34, 191-93 (1983), *aff'd. in part, vacated in part*, 756 F.2d 1430 (9th Cir. 1985), *cert. denied*, 474 U.S. 1055 (1986).

---

[16/] Treas. Reg. § 1.482-1(b)(1) provides, in part:

> In determining the true taxable income of a controlled taxpayer, the standard to be applied in every case is that of a taxpayer dealing at arm's length with an uncontrolled taxpayer.

[17/] Section 482 applies to plaintiff and its FSC, ATCI, since the former owns the latter. DPF 6. As such, they are also "related parties" under Temp. Treas. Reg. § 1.927(d)-(2)(b)T, and plaintiff is its FSC's "related supplier" under Temp. Treas. Reg. § 1.927(d)-2(a)T.

4. *In Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998), the Commissioner Did Not Concede, as Plaintiff Contends, That Temp. Treas. Reg. § 1.925(a)-1T(e)(4) Permits a Related Supplier to Determine Upward FSC Commissions Payable Even if the Statute of Limitations on Assessments Against the FSC Has Expired*

It is true, as plaintiff repetitiously reports (Pl. Br. 8, 12-13, 17-18, 21), that in its brief at 58 in support of its motion for partial summary judgment in *Union Carbide Corp. v. Commissioner*, 110 T.C. 375 (1998), the Service wrote:

> [Temp. Treas. Reg. § 1.925(a)-1T(e)(4)] does not require that the limitation period for assessing a tax under section 6501 be open with respect to UCFSC.

That assertion must be taken in context.

In *Union Carbide*, from 1990 through 1993 the Service examined income tax returns filed by Union Carbide and its FSC (UCFSC) for 1987, 1988, and 1989. IRS did not examine FSC issues for those years. For that reason, the Service requested that Union Carbide consent to an extension within which it could be assessed additional tax for those years, but made no similar request that UCFSC consent to an extension. 110 T.C. at 378. A notice of deficiency was issued to Union Carbide for 1987-89 on December 7, 1993. On February 28, 1994, Union Carbide filed a petition in the Tax Court to contest those deficiencies. On December 15, 1994, Union Carbide informed the Service that it intended to seek additional FSC commission expenses for 1987-89, and raised the issue in the Tax Court by amending its petition first on May 5, 1995, and again on

October 24, 1996, and filing amended tax returns on August 20, 1996. 110 TC at 379. UCFSC, its FSC, did not file amended returns reporting redetermined commissions for those years. The limitations periods were as follows (110 TC at 378):

| *Union Carbide Corp. v. Commissioner*, 110 T.C. 375 (1998) | | | |
|---|---|---|---|
| taxable year | 1987 | 1988 | 1989 |
| date § 6511 limitation period expired for UCFSC to file claim for refund | 9/15/1991 | 8/22/1992 | 10/10/1993 |
| date § 6501(a) limitation period expired for Commissioner to assess tax against UCFSC | 9/15/1991 | 8/22/1992 | 10/10/1993 |

Given the 4th sentence in Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which provides for redeterminations made by the "FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511," and the fact that, within the section 6511 statute of limitations period, UCFSC did not redetermine the commissions which Union Carbide attempted to redetermine, it is hardly surprising that in *Union Carbide* the Service raised that as its ground for partial summary judgment. Under those circumstances, there was no reason for the Commissioner to rely at all on the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4).

Moreover, Union Carbide did not argue that the general 3-year statute of limitations on assessment under § 6501 applied, but rather relied (alternatively) on the 6-year statute under § 6501(e)(1)(A) that applies to assessments with respect to omissions of 25 percent of gross income from the return. In other words, because Union Carbide had not met the shorter § 6511 limitations period specified in Sentence No. 4, it attempted to bootstrap its way into a redetermination by

arguing that the longer, special, 6-year statute governed.[18/] The essence of the Commissioner's argument seized upon by plaintiff here was that the requirement in the 4th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4)--that taxpayer-initiated redeterminations were only permitted if made while the periods of limitations for making claims for refund under § 6511 are open for both the FSC and the related supplier--cannot be vitiated by the ability, if any, of the Commissioner to make an assessment under the 6-year limitations period provided by § 6501(e)(1)(A).[19/]

---

[18/] The Tax Court summarized Union Carbide's argument as follows (110 T.C. at 385):

> As a further alternative argument, petitioner maintains that if taxpayers must satisfy any dual limitations requirement under the Regulation, the period applicable to the party in the deficiency position must be based on section 6501 rather than section 6511. (The limitations periods contained in sections 6501 and 6511 are not uniformly parallel.) In that connection, petitioner argues that its claims for additional FSC commission expenses for 1988 and 1989 . . . are timely because they were made within the periods for petitioner to file claims for refund under section 6511 and for respondent to assess correlative deficiencies against UCFSC under section 6501(e)(1)(A) (the 6-year period of limitations applicable to omissions from gross income in excess of 25 percent of the gross income reported on the taxpayer's return).

[19/] The Internal Revenue Service's Chief Counsel's position that Temp. Treas. Reg. § 1.925(a)-1T(e)(4) requires that the assessment period for both the FSC and the related supplier be open in order for a redetermination to be made has been expressed, *e.g.*, in FSA 199919021 (May 14, 1999), 1999 WL 302299; FSA 199924016 (June 18, 1999), 1999 WL 399953; and FSA 200049012 (Aug. 25, 2000), 2000 WL 33125139.

## CONCLUSION

WHEREFORE, The United States respectfully requests this Court to deny plaintiff's motion for summary judgment, and to grant the Government's motion for summary judgment in its favor, plus costs, and dismissal of the complaint with prejudice.

Respectfully submitted,

June 22, 2007

s/George L. Squires
GEORGE L. SQUIRES
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

June 22, 2007

s/Mary M. Abate
Of Counsel