IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ABBOTT LABORATORIES and U.S. SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-778 T |
| | ) | Judge Allegra |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
GEORGE L. SQUIRES
Attorneys
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**Page**

Internal Revenue Code of 1986 (26 U.S.C.) as amended through 1989:

§ 114 . . . . . 1
§ 291 . . . . . 1
§ 482 . . . . . 1
§ 921 . . . . . 2
§ 922 . . . . . 2
§ 923 . . . . . 3
§ 924 . . . . . 4
§ 925 . . . . . 6
§ 927 . . . . . 7
§ 941 . . . . . 8
§ 942 . . . . . 9
§ 943 . . . . . 10
§ 992 . . . . . 11
§ 994 . . . . . 11
§ 6401 . . . . . 12
§ 6501 . . . . . 12
§ 6511 . . . . . 13

Treasury Regulations (26 C.F.R.) as amended through 1989:

§ 1.482-1(a) . . . . . 13
§ 301.6402-1 . . . . . 14

Temporary Treasury Regulations (26 C.F.R.) as amended through 1989:

§ 1.921-1T(a) A-1 . . . . . 14
§ 1.924(a)-1T(a) and (b) . . . . . 14
§ 1.925(a)-1T(a) . . . . . 15
§ 1.925(a)-1T(c) . . . . . 16
§ 1.925(a)-IT(d) . . . . . 16
§ 1.925(a)-1T(e) . . . . . 17
§ 1.925(b)-1T(a) . . . . . 18
§ 1.925(b)-1T(b) . . . . . 19
§ 1.925(b)-1T(c) . . . . . 20
§ 1.927(d)-2T(a) . . . . . 21
§ 1.927(d)-2T(b) . . . . . 21

**Internal Revenue Code of 1986 (26 U.S.C.) as amended through 1989:**

**§ 114. Extraterritorial Income.**

(a) EXCLUSION.--Gross income does not include extraterritorial income.
(b) EXCEPTION.--Subsection (a) shall not apply to extraterritorial income which is not qualifying foreign trade income as determined under subpart E of part III of subchapter N.
(c) DISALLOWANCE OF DEDUCTIONS.--

(1) IN GENERAL.--Any deduction of a taxpayer allocated under paragraph (2) to extraterritorial income of the taxpayer excluded from gross income under subsection (a) shall not be allowed.

(2) ALLOCATION.--Any deduction of the taxpayer properly apportioned and allocated to the extraterritorial income derived by the taxpayer from any transaction shall be allocated on a proportionate basis between--

(A) the extraterritorial income derived from such transaction which is excluded from gross income under subsection (a), and

(B) the extraterritorial income derived from such transaction which is not so excluded.

(d) DENIAL OF CREDITS FOR CERTAIN FOREIGN TAXES.--Notwithstanding any other provision of this chapter, no credit shall be allowed under this chapter for any income, war profits, and excess profits taxes paid or accrued to any foreign country or possession of the United States with respect to extraterritorial income which is excluded from gross income under subsection (a).
(e) EXTRATERRITORIAL INCOME.--For purposes of this section, the term 'extraterritorial income' means the gross income of the taxpayer attributable to foreign trading gross receipts (as defined in section 942) of the taxpayer.

**§ 291. Special rules relating to corporate preference items**

(a) Reduction in certain preference items, etc.--For purposes of this subtitle, in the case of a corporation--

* * * * *

(4) Certain FSC income.--In the case of taxable years beginning after December 31, 1984, section 923(a) shall be applied with respect to any FSC by substituting--

(A) "30 percent" for "32 percent" in paragraph (2), and
(B) " 15/23 " for " 16/23 " in paragraph (3).

* * * * *

**§ 482. Allocation of income and deductions among taxpayers**

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or

allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses. In the case of any transfer (or license) of intangible property (within the meaning of section 936(h)(3)(B)), the income with respect to such transfer or license shall be commensurate with the income attributable to the intangible.

**§ 921. Exempt foreign trade income excluded from gross income**

(a) Exclusion.--Exempt foreign trade income of a FSC shall be treated as foreign source income which is not effectively connected with the conduct of a trade or business within the United States.

(b) Proportionate allocation of deductions to exempt foreign trade income.-- Any deductions of the FSC properly apportioned and allocated to the foreign trade income derived by a FSC from any transaction shall be allocated between--

(1) the exempt foreign trade income derived from such transaction, and

(2) the foreign trade income (other than exempt foreign trade income) derived from such transaction, on a proportionate basis.

(c) Denial of credits.--Notwithstanding any other provision of this chapter, no credit (other than a credit allowable under section 27(a), 33, or 34) shall be allowed under this chapter to any FSC.

(d) Foreign trade income, investment income, and carrying charges treated as effectively connected with United States business.--For purposes of this chapter--

(1) all foreign trade income of a FSC other than--

(A) exempt foreign trade income, and

(B) section 923(a)(2) non-exempt income,

(2) all interest, dividends, royalties, and other investment income received or accrued by a FSC, and

(3) all carrying charges received or accrued by a FSC, shall be treated as income effectively connected with a trade or business conducted through a permanent establishment of such corporation within the United States. Income described in paragraph (1) shall be treated as derived from sources within the United States.

(Added Pub.L. 98-369, Div. A, Title VIII, § 801(a), July 18, 1984, 98 Stat. 985.)

**§ 922. FSC defined**

(a) FSC defined.--For purposes of this title, the term "FSC" means any corporation--

(1) which--

(A) was created or organized--

(i) under the laws of any foreign country which meets the requirements of section 927(e)(3), or

(ii) under the laws applicable to any possession of the United States,

(B) has no more than 25 shareholders at any time during the taxable year,

(C) does not have any preferred stock outstanding at any time during the taxable year,

(D) during the taxable year--

(I) maintains an office located outside the United States in a foreign country which meets the requirements of section 927(e)(3) or in any possession of the United States,

(ii) maintains a set of the permanent books of account (including invoices) of such corporation at such office, and

(iii) maintains at a location within the United States the records which such corporation is required to keep under section 6001,

(E) at all times during the taxable year, has a board of directors which includes at least one individual who is not a resident of the United States, and

(F) is not a member, at any time during the taxable year, of any controlled group of corporations of which a DISC is a member, and

(2) which has made an election (at the time and in the manner provided in section 927(f)(1)) which is in effect for the taxable year to be treated as a FSC.

(b) Small FSC defined. [omitted]

(Added Pub.L. 98-369, Div. A, Title VIII, § 801(a), July 18, 1984, 98 Stat. 986.)

**§ 923. Exempt foreign trade income**

(a) Exempt foreign trade income.--For purposes of this subpart--

(1) In general.--The term "exempt foreign trade income" means the aggregate amount of all foreign trade income of a FSC for the taxable year which is described in paragraph (2) or (3).

(2) Income determined without regard to administrative pricing rules.--In the case of any transaction to which paragraph (3) does not apply, 32 percent of the foreign trade income derived from such transaction shall be treated as described in this paragraph. For purposes of the preceding sentence, foreign trade income shall not include any income properly allocable to excluded property described in subparagraph (B) of section 927(a)(2) (relating to intangibles).

(3) Income determined with regard to administrative pricing rules.--In the case of any transaction with respect to which paragraph (1) or (2) of section 925(a) (or the corresponding provisions of the regulations prescribed under section 925(b)) applies, 16/23 of the foreign trade income derived from such transaction shall be treated as described in this paragraph.

(4) Special rule for foreign trade income allocable to a cooperative.--

(A) In general.--In any case in which a qualified cooperative is a shareholder of a FSC, paragraph (3) shall be applied with respect to that portion of the foreign trade income of such FSC for any taxable year which is properly allocable to the marketing of agricultural or horticultural products (or the providing of related services) by such cooperative by substituting "100 percent" for "16/23".

(B) Paragraph only to apply to amounts FSC distributes.--Subparagraph (A) shall not apply for any taxable year unless the FSC distributes to the qualified cooperative the amount which (but for such subparagraph) would not be treated as exempt foreign trade income. Any distribution under this subparagraph for any taxable year--

(I) shall be made before the due date for filing the return of tax for such taxable year, but

(ii) shall be treated as made on the last day of such taxable year.

(5) Special rule for military property.--Under regulations prescribed by the Secretary, that portion of the foreign trading gross receipts of the FSC for the taxable year attributable to the disposition of, or services relating to, military property (within the meaning of section 995(b)(3)(B)) which may be treated as exempt foreign trade income shall equal 50 percent of the amount which (but for this paragraph) would be treated as exempt foreign trade income.

(6) Cross reference.--For reduction in amount of exempt foreign trade income, see section 291(a)(4).

(b) Foreign trade income defined.--For purposes of this subpart, the term "foreign trade income" means the gross income of a FSC attributable to foreign trading gross receipts.

(Added Pub.L. 98-369, Div. A, Title VIII, § 801(a), July 18, 1984, 98 Stat. 986, and amended Pub.L. 99-514, Title XVIII, § 1876(b)(3), Oct. 22, 1986, 100 Stat. 2898.

**§ 924. Foreign trading gross receipts**

(a) In general.--Except as otherwise provided in this section, for purposes of this subpart, the term "foreign trading gross receipts" means the gross receipts of any FSC which are--

(1) from the sale, exchange, or other disposition of export property,

(2) from the lease or rental of export property for use by the lessee outside the United States,

(3) for services which are related and subsidiary to--

(A) any sale, exchange, or other disposition of export property by such corporation, or

(B) any lease or rental of export property described in paragraph (2) by such corporation,

(4) for engineering or architectural services for construction projects located (or proposed for location) outside the United States, or

(5) for the performance of managerial services for an unrelated FSC or DISC in furtherance of the production of foreign trading gross receipts described in paragraph (1), (2), or (3).

Paragraph (5) shall not apply to a FSC for any taxable year unless at least 50 percent of its gross receipts for such taxable year is derived from activities described in paragraph (1), (2), or (3).

(b) Foreign management and foreign economic process requirements.--

(1) In general.--Except as provided in paragraph (2)--

(A) a FSC shall be treated as having foreign trading gross receipts for the taxable year only if the management of such corporation during such taxable year takes place outside the United States as required by subsection (c), and

(B) a FSC has foreign trading gross receipts from any transaction only if economic processes with respect to such transaction take place outside the United States as required by subsection (d).

(2) Exception for small FSC.– [omitted]

(c) Requirement that FSC be managed outside the United States.–[omitted]

(d) Requirement that economic processes take place outside the United States.–

(1) - (3) [omitted]

(4) Rules for commissions, etc.--The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subsection and subsection (e) in the case of commissions, rentals, and furnishing of services.

(e) Activities relating to disposition of export property.--The activities referred to in subsection (d) are--

(1) advertising and sales promotion,

(2) the processing of customer orders and the arranging for delivery of the export property,

(3) transportation from the time of acquisition by the FSC (or, in the case of a commission relationship, from the beginning of such relationship for such transaction) to the delivery to the customer,

(4) the determination and transmittal of a final invoice or statement of account and the receipt of payment, and

(5) the assumption of credit risk.

(f) Certain receipts not included in foreign trading gross receipts.--

(1) Certain receipts excluded on basis of use; subsidized receipts and receipts from related parties excluded.--The term "foreign trading gross receipts" shall not include receipts of a FSC from a transaction if--

(A) the export property or services--

(I) are for ultimate use in the United States, or

(ii) are for use by the United States or any instrumentality thereof and such use of export property or services is required by law or regulation,

(B) such transaction is accomplished by a subsidy granted by the United States or any instrumentality thereof, or

(C) such receipts are from another FSC which is a member of the same controlled group of corporations of which such corporation is a member.

In the case of gross receipts of a FSC from a transaction involving any property, subparagraph (C) shall not apply if such FSC (and all other FSC's which are members of the same controlled group and which receive gross receipts from a transaction involving such property) do not use the pricing rules under paragraph (1) of section 925(a) (or the corresponding provisions of the regulations prescribed under section 925(b)) with respect to any transaction involving such property.

(2) Investment income; carrying charges.--The term "foreign trading gross receipts" shall not include any investment income or carrying charges.

(Added Pub.L. 98-369, Div. A, Title VIII, § 801(a), July 18, 1984, 98 Stat. 987, and amended Pub.L. 99-514, Title XVIII, § 1876(e)(2), (l), Oct. 22, 1986, 100 Stat. 2899, 2901.)

**§ 925. Transfer pricing rules**

(a) In general.--In the case of a sale of export property to a FSC by a person described in section 482, the taxable income of such FSC and such person shall be based upon a transfer price which would allow such FSC to derive taxable income attributable to such sale (regardless of the sales

price actually charged) in an amount which does not exceed the greatest of--

(1) 1.83 percent of the foreign trading gross receipts derived from the sale of such property by such FSC,

(2) 23 percent of the combined taxable income of such FSC and such person which is attributable to the foreign trading gross receipts derived from the sale of such property by such FSC, or

(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482).

Paragraphs (1) and (2) shall apply only if the FSC meets the requirements of subsection (c) with respect to the sale.

(b) Rules for commissions, rentals, and marginal costing.--The Secretary shall prescribe regulations setting forth--

(1) rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions, rentals, and other income, and

(2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a FSC is seeking to establish or maintain a market for export property.

(c) Requirements for use of administrative pricing rules.--A sale by a FSC meets the requirements of this subsection if--

(1) all of the activities described in section 924(e) attributable to such sale, and

(2) all of the activities relating to the solicitation (other than advertising), negotiation, and making of the contract for such sale, have been performed by such FSC (or by another person acting under a contract with such FSC).

(d) Limitation on gross receipts pricing rule.--The amount determined under subsection (a)(1) with respect to any transaction shall not exceed 2 times the amount which would be determined under subsection (a)(2) with respect to such transaction.

(e) Taxable income.--For purposes of this section, the taxable income of a FSC shall be determined without regard to section 921.

(f) Special rule for cooperatives.--In any case in which a qualified cooperative sells export property to a FSC, in computing the combined taxable income of such FSC and such organization for purposes of subsection (a)(2), there shall not be taken into account any deduction allowable under subsection (b) or (c) of section 1382 (relating to patronage dividends, per-unit retain allocations, and nonpatronage distributions).

(Added Pub.L. 98-369, Div. A, Title VIII, § 801(a), July 18, 1984, 98 Stat. 990.)

**§ 927. Other definitions and special rules**

(a) Export property.--For purposes of this subpart--

(1) In general.-- The term "export property" means property--

(A) manufactured, produced, grown, or extracted in the United States by a person other than a FSC,

(B) held primarily for sale, lease, or rental, in the ordinary course of trade or business, by, or to, a FSC, for direct use, consumption, or disposition outside the United States, and

(C) not more than 50 percent of the fair market value of which is attributable to articles imported into the United States.

For purposes of subparagraph (C), the fair market value of any article imported into the United States shall be its appraised value, as determined by the Secretary under section 402 of the Tariff Act of 1930 (19 U.S.C. 1401a) in connection with its importation.

* * * * *

(b) Gross receipts.--

(1) In general.--For purposes of this subpart, the term "gross receipts" means--

(A) the total receipts from the sale, lease, or rental of property held primarily for sale, lease, or rental in the ordinary course of trade or business, and

(B) gross income from all other sources.

(2) Gross receipts taken into account in case of commissions.--In the case of commissions on the sale, lease, or rental of property, the amount taken into account for purposes of this subpart as gross receipts shall be the gross receipts on the sale, lease, or rental of the property on which such commissions arose.

* * * * *

(d) Other definitions.--For purposes of this subpart–

* * * * *

(2) Transaction.--

(A) In general.--The term "transaction" means–

(i) any sale, exchange, or other disposition,

(ii) any lease or rental, and

(iii) any furnishing of services.

(B) Grouping of transactions.--To the extent provided in regulations, any provision of this subpart which, but for this subparagraph, would be applied on a transaction-by-transaction basis may be applied by the taxpayer on the basis of groups of transactions based on product lines or recognized industry or trade usage. Such regulations may permit different groupings for different purposes.

(3) United States defined.--The term "United States" includes the Commonwealth of Puerto Rico.

(4) Controlled group of corporations.--The term "controlled group of corporations" has the meaning given to such term by section 1563(a), except that--

(A) "more than 50 percent" shall be substituted for "at least 80 percent" each place it appears therein, and

(B) section 1563(b) shall not apply.

(5) Possessions.--The term "possession of the United States" means Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and the Virgin Islands of the United States.

(6) Section 923(a)(2) non-exempt income.–[omitted]

(e) Special rules.--

(1) Source rules for related persons.--Under regulations, the income of a person described in section 482 from a transaction giving rise to foreign trading gross receipts of a FSC which is treated as from sources outside the United States shall not exceed the amount which would be treated as foreign source income earned by such person if the pricing rule under section 994 which corresponds to the rule used under section 925 with respect to such transaction applied to such transaction.

* * * * *

(Added Pub.L. 98-369, Title VIII, § 801(a), July 18, 1984, 98 Stat. 991, and amended Pub.L. 99-514, Title XVIII, § 1876(a)(1), (e)(1), (f)(1), (p)(5), Oct. 22, 1986, 100 Stat. 2897, 2899, 2902; Pub.L. 100-647, Title I, § 1012(bb)(8)(A), Nov. 10, 1988, 102 Stat. 3536.)

**§ 941. Qualifying foreign trade income**

(a) Qualifying foreign trade income.--For purposes of this subpart and section 114--

(1) In general.--The term "qualifying foreign trade income" means, with respect to any transaction, the amount of gross income which, if excluded, will result in a reduction of the taxable income of the taxpayer from such transaction equal to the greatest of--

(A) 30 percent of the foreign sale and leasing income derived by the taxpayer from such transaction,

(B) 1.2 percent of the foreign trading gross receipts derived by the taxpayer from the transaction, or

(C) 15 percent of the foreign trade income derived by the taxpayer from the transaction.

In no event shall the amount determined under subparagraph (B) exceed 200 percent of the amount determined under subparagraph (C).

(2) Alternative computation.--A taxpayer may compute its qualifying foreign trade income under a subparagraph of paragraph (1) other than the subparagraph which results in the greatest amount of such income.

(3) Limitation on use of foreign trading gross receipts method.--If any person computes its qualifying foreign trade income from any transaction with respect to any property under paragraph (1)(B), the qualifying foreign trade income of such person (or any related person) with respect to any other transaction involving such property shall be zero.

(4) Rules for marginal costing.--The Secretary shall prescribe regulations setting forth rules for the allocation of expenditures in computing foreign trade income under paragraph (1)(C) in those cases where a taxpayer is seeking to establish or maintain a market for qualifying foreign trade property.

(5) Participation in international boycotts, etc.--Under regulations prescribed by the Secretary, the qualifying foreign trade income of a taxpayer for any taxable year shall be reduced (but not below zero) by the sum of--

(A) an amount equal to such income multiplied by the international boycott factor determined under section 999, and

(B) any illegal bribe, kickback, or other payment (within the meaning of section 162(c)) paid by or on behalf of the taxpayer directly or indirectly to an official, employee, or agent in fact of a government.

(b) Foreign trade income.--For purposes of this subpart--

(I) In general.--The term "foreign trade income" means the taxable income of the taxpayer attributable to foreign trading gross receipts of the taxpayer.

(2) Special rule for cooperatives.--In any case in which an organization to which part I of subchapter T applies which is engaged in the marketing of agricultural or horticultural products sells qualifying foreign trade property, in computing the taxable income of such cooperative, there shall not be taken into account any deduction allowable under subsection (b) or (c) of section 1382 (relating to patronage dividends, per-unit retain allocations, and nonpatronage distributions).

(c) Foreign sale and leasing income.--For purposes of this section--

(1) In general.--The term "foreign sale and leasing income" means, with respect to any transaction--

(A) foreign trade income properly allocable to activities which--

(I) are described in paragraph (2)(A)(I) or (3) of section 942(b), and

(ii) are performed by the taxpayer (or any person acting under a contract with such taxpayer) outside the United States, or

(B) foreign trade income derived by the taxpayer in connection with the lease or rental of qualifying foreign trade property for use by the lessee outside the United States.

*　　*　　*　　*　　*

**§ 942. Foreign Trading Gross Receipts.**

(a) FOREIGN TRADING GROSS RECEIPTS.--

(1) IN GENERAL.--Except as otherwise provided in this section, for purposes of this subpart, the term 'foreign trading gross receipts' means the gross receipts of the taxpayer which are--

(A) from the sale, exchange, or other disposition of qualifying foreign trade property,

(B) from the lease or rental of qualifying foreign trade property for use by the lessee outside the United States,

(C) for services which are related and subsidiary to--

(I) any sale, exchange, or other disposition of qualifying foreign trade property by such taxpayer, or

(ii) any lease or rental of qualifying foreign trade property described in subparagraph (B) by such taxpayer,

(D) for engineering or architectural services for construction projects located (or proposed for location) outside the United States, or

(E) for the performance of managerial services for a person other than a related person in furtherance of the production of foreign trading gross receipts described in

subparagraph (A), (B), or (C).

Subparagraph (E) shall not apply to a taxpayer for any taxable year unless at least 50 percent of its foreign trading gross receipts (determined without regard to this sentence) for such taxable year is derived from activities described in subparagraph (A), (B), or (C).

* * * * *

**§ 943. Other Definitions and Special Rules.**

(a) QUALIFYING FOREIGN TRADE PROPERTY.--For purposes of this subpart--

(1) IN GENERAL.--The term 'qualifying foreign trade property' means property--

(A) manufactured, produced, grown, or extracted within or outside the United States,

(B) held primarily for sale, lease, or rental, in the ordinary course of trade or business for direct use, consumption, or disposition outside the United States, and

(C) not more than 50 percent of the fair market value of which is attributable to--

(I) articles manufactured, produced, grown, or extracted outside the United States, and

(ii) direct costs for labor (determined under the principles of section 263A) performed outside the United States.

For purposes of subparagraph (C), the fair market value of any article imported into the United States shall be its appraised value, as determined by the Secretary under section 402 of the Tariff Act of 1930 (19 U.S.C. 1401a) in connection with its importation, and the direct costs for labor under clause (ii) do not include costs that would be treated under the principles of section 263A as direct labor costs attributable to articles described in clause (I).

* * * * *

(b) OTHER DEFINITIONS AND RULES.--For purposes of this subpart--

(1) TRANSACTION.--

(A) IN GENERAL.--The term 'transaction' means--

(I) any sale, exchange, or other disposition,

(ii) any lease or rental, and

(iii) any furnishing of services.

(B) GROUPING OF TRANSACTIONS.--To the extent provided in regulations, any provision of this subpart which, but for this subparagraph, would be applied on a transaction-by-transaction basis may be applied by the taxpayer on the basis of groups of transactions based on product lines or recognized industry or trade usage. Such regulations may permit different groupings for different purposes.

(2) UNITED STATES DEFINED.--The term 'United States' includes the Commonwealth of Puerto Rico. The preceding sentence shall not apply for purposes of determining whether a corporation is a domestic corporation.

* * * * *

**§ 991. Taxation of a Domestic International Sales Corporation**

For purposes of the taxes imposed by this subtitle upon a DISC (as defined in section

992(a)), a DISC shall not be subject to the taxes imposed by this subtitle.

**§ 992. Requirements of a Domestic International Sales Corporation**

(a) Definition of "DISC" and "former DISC".--

(1) DISC.--For purposes of this title, the term "DISC" means, with respect to any taxable year, a corporation which is incorporated under the laws of any State and satisfies the following conditions for the taxable year:

(A) 95 percent or more of the gross receipts (as defined in section 993(f)) of such corporation consist of qualified export receipts (as defined in section 993(a)),

(B) the adjusted basis of the qualified export assets (as defined in section 993(b)) of the corporation at the close of the taxable year equals or exceeds 95 percent of the sum of the adjusted basis of all assets of the corporation at the close of the taxable year,

(C) such corporation does not have more than one class of stock and the par or stated value of its outstanding stock is at least $2,500 on each day of the taxable year,

(D) the corporation has made an election pursuant to subsection (b) to be treated as a DISC and such election is in effect for the taxable year, and

(E) such corporation is not a member of any controlled group of which a FSC is a member.

*　　*　　*　　*　　*

**§ 994 Inter-Company Pricing Rules.**

(a) IN GENERAL–In the case of a sale of export property to a DISC by a person described in section 482, the taxable income of such DISC and such person shall be b based upon a transfer price which would allow such DISC to derive taxable income attributable to such sale (regardless of the sales price actually charged) in an amount which does not exceeded the greatest of –

(1) 4 percent of the qualified export receipts on the sale of such property by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts,

(2) 50 percent of the combined taxable income of such DISC and such person which is attributable to the qualified export receipts on such property derived as the result of a sale by the DISC plus 10 percent of the export promotion expenses of such DISC attributable to such receipts, or

(3) taxable income based upon the sale price actually charged (but subject to the rules provided in section 482.)

(b) RULES FOR COMMISSIONS, RENTALS AND MARGINAL COSTING.–The Secretary shall prescribe regulations setting forth–

(1) rules which are consistent with the rules set forth in subsection (a) for the application of this section in the case of commissions, rentals, and other income, and

(2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a DISC is seeking to establish or maintain a market for export property.

* * * * *

**§ 6401. Amounts treated as overpayments**

(a) Assessment and collection after limitation period.--The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.

**§ 6501. Limitations on assessment and collection**

(a) General rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

* * * * *

(c) Exceptions.--

* * * * *

(4) Extension by agreement.–Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing before the expiration of the period previously agreed upon.

* * * * *

(e) Substantial omission of items.--Except as otherwise provided in subsection (c)--

(1) Income taxes.--In the case of any tax imposed by subtitle A–

(A) General rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * * *.

* * * * *

**§ 6511. Limitations on credit or refund**

(a) Period of limitation on filing claim.--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. * * *

(b) Limitation on allowance of credits and refunds.--

(1) Filing of claim within prescribed period.–No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

* * * * *

(c) Special rules applicable in case of extension of time by agreement.--If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund--

(1) Time for filing claim.--The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4).

* * * * *

**Treasury Regulations:**

**§ 1.482-1 Allocation of income and deductions among taxpayers.**

**(a) In general--**

(1) [Reserved].

(2) Authority to make allocations. The district director may make allocations between or among the members of a controlled group if a controlled taxpayer has not reported its true taxable income. In such case, the district director may allocate income, deductions, credits, allowances, basis, or any other item or element affecting taxable income (referred to as allocations). The appropriate allocation may take the form of an increase or decrease in any relevant amount.

(3) Taxpayer's use of section 482. If necessary to reflect an arm's length result, a controlled taxpayer may report on a timely filed U.S. income tax return (including extensions) the results of its controlled transactions based upon prices different from those actually charged. Except as provided in this paragraph, section 482 grants no other right to a controlled taxpayer to apply the provisions of section 482 at will or to compel the district director to apply such provisions. Therefore, no untimely or amended returns will be permitted to decrease taxable income based on allocations or other adjustments with respect to controlled transactions. See § 1.6662-6T(a)(2) or successor regulations.

**§ 301.6402-1 Authority to make credits or refunds.**

The Commissioner, within the applicable period of limitations, may credit any overpayment of tax, including interest thereon, against any outstanding liability for any tax (or for any interest, additional amount, addition to the tax, or assessable penalty) owed by the person making the overpayment and the balance, if any, shall be refunded, subject to sections 6402(c) and (d) and the regulations thereunder, to that person by the Commissioner.

**Temporary Treasury Regulations:**

**§ 1.921-1T(a) Termination of a DISC–(1) At end of 1984.**

Q-1: What is the effect of the termination on December 31, 1984, of a DISC's taxable year?

A-1: Without regard to the annual accounting period of the DISC, the last taxable year of each DISC beginning during 1984 shall be deemed to close on December 31, 1984. The corporation's DISC election also shall be deemed revoked at the close of business on December 31, 1984. (A DISC that does not elect to be an interest charge DISC as of January 1, 1985, in addition to a corporation described in section 992(a)(3), shall be referred to as a "former DISC".) A corporation which wishes to be treated as a FSC, a small FSC, or an interest charge DISC must make an election as provided under paragraph (b)(Q & A #1) of this section.

**§ 1.924(a)-1T Temporary Regulations; Definition of Foreign Trading Gross Receipts.**

**(a) In general.** The term "foreign trading gross receipts" means any of the five amounts described in paragraphs (b) through (f) of this section, except to the extent that any of the five amounts is an excluded receipt within the meaning of paragraph (g) of this section. These amounts will not be foreign trading gross receipts if the FSC is not managed outside the United States, pursuant to section 924(c), or if the economic processes with regard to a transaction, or group of transactions, that are required of a FSC by section 924(d) do not take place outside the United States. The requirement that these activities take place outside the United States does not apply to a small FSC. The activities required by sections 924 (c) and (d) may be performed either by the FSC or by any person (whether or not related to the FSC) acting under contract with the FSC for the performance of the required activities. Sections 1.924(c)-1 and 1.924(d)-1 provide rules to determine whether these requirements have been met. For purposes of this section--

(1) FSC. All references to a FSC in this section mean a FSC, except when the context indicates that such term means a corporation in the process of meeting the conditions necessary for that corporation to become a FSC. All references to a FSC in this section shall include a small FSC unless indicated otherwise.

(2) Sale and lease. The term "sale" includes an exchange or other disposition and the term "lease" includes a rental or a sublease. The term "license" includes a sublicense. All rules under this section applicable to leases of export property apply in the same manner to licenses of export property. See § 1.927(a)-1T(f)(3) for a description of intangible property which cannot be export property.

(3) Gross receipts. The term "gross receipts" is defined by section 927(b) and § 1.927(b)-1T.

(4) Export property. The term "export property" is defined by section 927(a) and § 1.927(a)-1T.

(5) Controlled group. The term "controlled group" is defined by paragraph (h) of this section.

(6) Related supplier and related party. The terms related supplier and related party are

defined by § 1.927(d)-2T.

**(b) Sales of export property.** Foreign trading gross receipts of a FSC include gross receipts from the sale of export property by the FSC, or by any principal for whom the FSC acts as a commission agent (whether or not the principal is a related supplier), pursuant to the terms of a contract entered into with a purchaser by the FSC or by the principal at any time or by any other person and assigned to the FSC or the principal at any time prior to the shipment of the property to the purchaser. Any agreement, oral or written, which constitutes a contract at law, satisfies the contractual requirements of this paragraph. Gross receipts from the sale of export property, whenever received, do not constitute foreign trading gross receipts unless the seller (or the corporation acting as commission agent for the seller) is a FSC at the time of the shipment of the property to the purchaser. For example, if a corporation which sells export property under the installment method is not a FSC for the taxable year in which the property is shipped to the purchaser, gross receipts from the sale do not constitute foreign trading gross receipts for any taxable year of the corporation.

**§ 1.925(a)-1T Temporary Regulations; Transfer Pricing Rules for FSCs.**

**(a) Scope--**

(1) Transfer pricing rules. In the case of a transaction described in paragraph (b) of this section, section 925 permits a related party to a FSC to determine the allowable transfer price charged the FSC (or commission paid to the FSC) by its choice of the three transfer pricing methods described in paragraphs (c)(2), (3), and (4) of this section: The "1.83 percent" gross receipts method and the "23 percent" combined taxable income method (the administrative pricing rules) of section 925(a)(1) and (2), respectively, and the section 482 method of section 925(a)(3). (Any further reference to a FSC in this section shall include a small FSC unless indicated otherwise.) Subject to the special no-loss rule of § 1.925(a)- 1T(e)(1)(iii), any, or all, of the transfer pricing methods may be used in the same taxable year of the FSC for separate transactions (or separate groups of transactions). If either of the administrative pricing methods (the gross receipts method or combined taxable income method) is applied to a transaction, the Commissioner may not make distributions, apportionments, or allocations as provided by section 482 and the regulations under that section. The transfer price charged the FSC (or the commission paid to the FSC) on a transaction with a person that is not a related party to the FSC may be determined in any manner agreed to by the FSC and that person. However, the Commissioner will use special scrutiny to determine whether a person selling export property to a FSC (or paying a commission to a FSC) is a related party to the FSC with respect to a transaction if the FSC earns a profit on the transaction in excess of the profit it would have earned had the administrative pricing rules applied to the transaction.

* * * * *

**(c) Transfer price for sales of export property--**

(1) In general. Under this paragraph, rules are prescribed for computing the allowable price for a transfer from a related supplier to a FSC in the case of a sale, described in paragraph (b)(2)(iii)(A) of this section, of export property.

(2) The "1.83 percent" gross receipts method. Under the gross receipts method of

pricing, described in section 925(a)(1), the transfer price for a sale by the related supplier to the FSC is the price as a result of which the profit derived by the FSC from the sale will not exceed 1.83 percent of the foreign trading gross receipts of the FSC derived from the sale of the export property. * * *

(3) The "23 percent" combined taxable income method. Under the combined taxable income method of pricing, described in section 925(a)(2), the transfer price for a sale by the related supplier to the FSC is the price as a result of which the profit derived by the FSC from the sale will not exceed 23 percent of the full costing combined taxable income (as defined in paragraph (c)(6) of this section) of the FSC and the related supplier attributable to the foreign trading gross receipts from such sale.

(4) Section 482 method. If the methods of paragraph (c)(2) and (3) of this section are inapplicable to a sale or if the related supplier does not choose to use them, the transfer price for a sale by the related supplier to the FSC is to be determined on the basis of the sales price actually charged but subject to the rules provided by section 482 and the regulations for that section and by § 1.925(a)-1T(a)(3)(ii).

* * * * *

(8) Grouping transactions.

(I) [Reserved]. For further guidance, see § 1.925(a)-1(c)(8)(I).

(ii) A determination by the related supplier as to a product or a product line will be accepted by a district director if such determination conforms to either of the following standards: Recognized trade or industry usage, or the two-digit major groups (or any inferior classifications or combinations thereof, within a major group) of the Standard Industrial Classification as prepared by the Statistical Policy Division of the Office of Management and Budget, Executive Office of the President. A product shall be included in only one product line for purposes of this section if a product otherwise falls within more than one product line classification.

* * * * *

**(d) Rules under section 925(a)(1) and (2) for transactions other than sales by a FSC.** The following rules are prescribed for purposes of applying the gross receipts method or combined taxable income method to transactions other than sales by a FSC.

* * * * *

(2) Commissions. If any transaction to which section 925 applies is handled on a commission basis for a related supplier by a FSC and if commissions paid to the FSC give rise to gross receipts to the related supplier which would have been foreign trading gross receipts under section 924(a) had the FSC made the sale directly then–

* * * * *

(iii) The combined taxable income of a FSC and the related supplier from the transaction is the excess of the related supplier's gross receipts from the transaction which would have been foreign trading gross receipts had the sale been made by the FSC directly over the related supplier's and the FSC's total costs, excluding the commission

paid or payable to the FSC, but including the related supplier's cost of goods sold and its and the FSC's noninventoriable costs (see § 1.471-11(c)(2)(ii)) which relate to the gross receipts from the transaction. The related supplier's gross receipts for purposes of the administrative pricing methods shall be reduced by carrying charges, if any, as computed under § 1.927(d)-1(a)(Q&A2). These carrying charges shall remain income of the related supplier.

(iv) The maximum commission the FSC may charge the related supplier is the amount of income determined under subdivisions (ii) and (iii) of this paragraph plus the FSC's total costs for the transaction as determined under paragraph (c)(6) of this section.

* * * * *

(e) Special rules for applying paragraphs (c) and (d) of this section–

* * * * *

(4) Subsequent determination of transfer price, rental income or commission. The FSC and its related supplier would ordinarily determine under section 925 and this section the transfer price or rental payment payable by the FSC or the commission payable to the FSC for a transaction before the FSC files its return for the taxable year of the transaction. After the FSC has filed its return, a redetermination of those amounts by the Commissioner may only be made if specifically permitted by a Code provision or regulations under the Code. Such a redetermination would include a redetermination by reason of an adjustment under section 482 and the regulations under that section or section 861 and § 1.861-8 which affects the amounts which entered into the determination. In addition, a redetermination may be made by the FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511 if they determine that a different transfer pricing method may be more beneficial. Also, the FSC and related supplier may redetermine the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and related supplier's profits under the transfer pricing methods. Any redetermination shall affect both the FSC and the related supplier. The FSC and the related supplier may not redetermine that the FSC was operating as a commission FSC rather than a buy-sell FSC, and vice versa.

(5) Procedure for adjustments to redeterminations.

(I) If a redetermination under paragraph (e)(4) of this section is made of the transfer price, rental payment or commission for a transaction, or group of transactions, the person who was underpaid under this redetermination shall establish (or be deemed to have established), at the date of the redetermination, an account receivable from the person with whom it engaged in the transaction equal to the difference between the amounts as redetermined and the amounts (if any) previously paid and received, plus the amount (if any) of the account receivable determined under paragraph (e)(3) of this section that remains unpaid. A corresponding account payable will be established by the person who underpaid the amount due.

(ii) An account receivable established in accordance with the above subdivision (5)(I) of this paragraph shall bear interest at an arm's length rate, computed in the manner

provided by § 1.482-2(a)(2), from the day after the date the account receivable is deemed established to the date of payment. The interest so computed shall be accrued and included in the taxable income for each taxable year during which the account receivable is outstanding of an accrual basis taxpayer or when paid if a cash basis taxpayer.

(iii) In lieu of establishing an account receivable in accordance with the above subdivision (5)(I) of this paragraph for all or part of an amount due a related supplier, the related supplier and FSC are permitted to treat all or part of any current or prior distribution which was made by the FSC as an additional payment of transfer price or rental payment or repayment of commission (and not as a distribution) made as of the date the distribution was made. Any additional amount arising on the redetermination due the related supplier after this treatment shall be represented by an account receivable established under the above subdivision (5)(I) of this paragraph. To the extent that a distribution is so treated under this subdivision (5)(iii), it shall cease to qualify as a distribution for any Federal income tax purpose. If all or part of any distribution made to a shareholder other than the related supplier is recharacterized under this subdivision (5)(iii), the related supplier shall establish an account receivable from that shareholder for the amount so recharacterized. The Commissioner may prescribe by Revenue Procedure conditions and procedures that must be met in order to obtain the relief provided by this subdivision (5)(iii).

* * * * *

**§ 1.925(b)-1T Temporary regulations; marginal costing rules.**

**(a) In general.** This section prescribes the marginal costing rules authorized by section 925(b)(2). If under paragraph (c)(1) of this section a FSC is treated for its taxable year as seeking to establish or maintain a foreign market for sales of an item, product, or product line of export property (as defined in § 1.927(a)-1T) from which foreign trading gross receipts (as defined in § 1.924(a)-1T) are derived, the marginal costing rules prescribed in paragraph (b) of this section may be applied at the related supplier's election to compute combined taxable income of the FSC and related supplier derived from those sales. (Any further reference to a FSC in this section shall include a small FSC unless indicated otherwise.) The combined taxable income determined under these marginal costing rules may be used to determine whether the "twice the amount determined under the combined taxable income method" limitation for the 1.83% of gross receipts test of section 925(d) has been met.

For FSC taxable years beginning after December 31, 1986, if the marginal costing rules are used to determine the section 925(d) limitation, the FSC may not earn more than 100% of full costing combined taxable income determined under the full costing combined taxable income method of § 1.925(a)-1T(c) (3) and (6). The marginal costing rules may be applied even if the related supplier does not manufacture, produce, grow, or extract the export property sold. The marginal costing rules do not apply to sales of export property which in the hands of a purchaser related under section 954(d)(3) to the seller give rise to foreign base company sales income as described

in section 954(d) unless, for the purchaser's year in which it resells the export property, section 954(b)(3)(A) is applicable or that income is under the exceptions in section 954(b)(4). In addition, the marginal costing rules do not apply to leases of property or to the performances of any services even if they are related and subsidiary services (as defined in § 1.924(a)- 1T(d) and § 1.925(a)-1T(b)(2)(iii)(C)).

**(b) Marginal costing rules--**

(1) In general. Marginal costing is a method under which only direct production costs of producing a particular item, product, or product line are taken into account for purposes of computing the combined taxable income of the FSC and its related supplier under section 925(a)(2). The costs to be taken into account are the related supplier's direct material and labor costs (as defined in § 1.471-11(b)(2)(I)). Costs which are incurred by the FSC and which are not taken into account in computing combined taxable income are deductible by the FSC only to the extent of the FSC's non-foreign trade income. If the related supplier is not the manufacturer or producer of the export property that is sold, the related supplier's purchase price shall be taken into account.

(2) Overall profit percentage limitation. Under marginal costing, the combined taxable income of the FSC and its related supplier may not exceed the overall profit percentage (determined under paragraph (c)(2) of this section) multiplied by the FSC's foreign trading gross receipts if the FSC is the principal on the sale (or the related supplier's gross receipts if the FSC is a commission agent) from the sale of export property.

(3) Grouping of transactions.

(I) In general, for purposes of this section, an item, product, or product line is the item or group consisting of the product or product line pursuant to § 1.925(a)-1T(c)(8) used by the taxpayer for purposes of applying the full costing combined taxable income method of § 1.925(a)-1T(c)(3) and (6).

(ii) However, for purposes of determining the overall profit percentage under paragraph (c)(2) of this section, any product or product line grouping permissible under § 1.925(a)-1T(c)(8) may be used at the annual choice of the FSC even though it may not be the same item or grouping referred to in subdivision (I) of this paragraph as long as the grouping chosen for determining the overall profit percentage is at least as broad as the grouping referred to in the above subdivision (I) of this paragraph. A product may be included for this purpose, however, in only one product group even though under the grouping rules it would otherwise fall in more than one group. Thus, the marginal costing rules will not apply with respect to any regrouping if the regrouping does not include any product (or products) that was included in the group for purposes of the full costing method.

* * * * *

**(c) Definitions–**

* * * * *

(2) Overall profit percentage.

(I) For purposes of this section, the overall profit percentage for a taxable year of the FSC for a product or product line is the percentage which--

(A) The combined taxable income of the FSC and its related supplier from the sale of export property plus all other taxable income of its related supplier from all sales (domestic and foreign) of such product or product line during the FSC's taxable year, computed under the full costing method, is of

(B) The total gross receipts (determined under § 1.927(b)-1T) of the FSC and related supplier from all sales of the product or product line.

(ii) At the annual option of the related supplier, the overall profit percentage for the FSC's taxable year for all products and product lines may be determined by aggregating the amounts described in subdivisions (I) (A) and (B) of this paragraph of the FSC, and all domestic members of the controlled group (as defined in section 927(d)(4) and § 1.924(a)-1T(h)) of which the FSC is a member, for the FSC's taxable year and for taxable years of the members ending with or within the FSC's taxable year.

(iii) For purposes of determining the amounts in subdivisions (I) and (ii) of this paragraph, a sale of property between a FSC and its related supplier or between domestic members of the controlled group shall be taken into account only during the FSC's taxable year (or taxable year of the member ending within the FSC's taxable year) during which the property is ultimately sold to a person which is not related to the FSC or if related, is a foreign person that is not a FSC.

(3) Full costing method. For purposes of section 925 and this section, the term "full costing combined taxable income method" is the method for determining full costing combined taxable income set forth in § 1.925(a)- 1T(c) (3) and (6).

**(d) Examples** [omitted]

**§ 1.927(d)-2T Temporary regulations; definitions and special rules relating to Foreign Sales Corporation.**

**(a) Definition of related supplier.** For purposes of sections 921 through 927 and the regulations under those sections, the term "related supplier" means a related party which directly supplies to a FSC any property or services which the FSC disposes of in a transaction producing foreign trading gross receipts, or a related party which uses the FSC as a commission agent in the disposition of any property or services producing foreign trading gross receipts. A FSC may have different related suppliers with respect to different transactions. If, for example, X owns all the stock of Y, a corporation, and of F, a FSC, and X sells a product to Y which is resold to F, only Y is the related supplier of F. If, however, X sells directly to F and Y also sells directly to F, then, as to the transactions involving direct sales to F, each of X and Y is a related supplier of F.

**(b) Definition of related party.** The term "related party" means a person which is owned or controlled directly or indirectly by the same interests as the FSC within the meaning of section 482 and § 1.482-1(a).