**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-778T**
**(Hon. Francis M. Allegra)**

**ABBOTT LABORATORIES AND U.S. SUBSIDIARIES,**

**Plaintiff**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant**

# BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Robert W. DeJoy
Attorney of Record
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 891-3993

Thomas V. M. Linguanti
Robert S. Walton
Of Counsel
BAKER & McKENZIE LLP
130 East Randolph Drive
Chicago, IL 60601
(312) 861-2623

Scott A. Knott
Of Counsel
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................ i

TABLE OF AUTHORITIES ........................................ iii

INTRODUCTION ........................................ 1

ARGUMENT ........................................ 3

I. TEMP. TREAS. REG. § 1.925(a)-1T(e)(4) REQUIRES THAT A REDETERMINATION BE FILED WITHIN THE PERIOD PRESCRIBED BY SECTION 6511; THE "SHALL AFFECT" LANGUAGE REFERS TO INCOME AND ADJUSTMENTS AND DOES NOTHING TO OVERRIDE THIS EXPLICIT RULE ........................................ 3

A. The "shall affect" language requires only that a FSC and a related supplier make corresponding adjustments with respect to FSC commissions ........................................ 3

B. The government's interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) ignores the words that are there and interposes words that are not ........................................ 7

1. There is no statutory requirement that section 6501 be open with respect to ATCI ........................................ 7

2. There is no regulatory requirement that section 6501 be open with respect to ATCI ........................................ 7

3. If the 6501 Assessment Period must be open, then, in effect, there is no known statute of limitations on FSC refund claims at all ........................................ 8

C. If the "shall affect" language applies to tax *collection* as well as *liability*, then section 6501 is not the only remedy ........................................ 11

II. IF TEMP. TREAS. REG. § 1.925(a)-1T(e)(4) MEANS WHAT THE GOVERNMENT SAYS IT MEANS, THEN IT IS INVALID ........................................ 15

A. The government's interpretation of the temporary regulation is unreasonable because it leads to absurd results ........................................ 17

B. The government's interpretation has no authority – it is a unilateral, unfounded determination ........................................ 18

III. THERE IS ONLY ONE REQUIREMENT FOR FILING CLAIMS FOR REFUND – THAT THE REFUND BE TIMELY FILED WITHIN THE PERIOD OF LIMITATIONS SET FORTH IN SECTION 6511 ........................................ 22

A. Section 6511 is the only provision in the Code that provides the time period within which claims for refund must be made ........................................ 22

B. The government's position in this case is directly contrary to its analysis in Union Carbide; the legal issue – the date by which a FSC redetermination must be made – is the same. ....................23

CONCLUSION....................26

# TABLE OF AUTHORITIES

**STATUTES**

26 U.S.C. §925 ........ *passim*

26 U.S.C. §6501 ........ *passim*

26 U.S.C. §6511 ........ *passim*

**REGULATIONS**

Treas. Reg. § 301.6501(c)-1(d) ........ 10

Temp. Treas. Reg. § 1.925(a)-1T(e)(4) ........ *passim*

**TREASURY DECISIONS**

T.D. 8126, 52 Fed. Reg. 6428 (Mar. 3, 1987) ........ 6, 18

T.D. 8764, 63 Fed. Reg. 10,305 (Mar. 3, 1998) ........ 18

T.D. 8944, 66 Fed. Reg. 13,427 (Mar. 6, 2001) ........ 18

**CASES**

Atlantic Mutual Ins. Co. v. Commissioner, 523 U.S. 382 (1998) ........ 18

Auto-Ordnance Corp. v. United States, 822 F.2d 1566 (Fed. Cir. 1987) ........ 6

Bankers Trust New York Corp. v. United States, 36 Fed. Cl. 304 (1996) ........ 16

Bowles v. Seminole Rock & Sand Co., 325 U.S. 410 (1945) ........ 16

Bull v. United States, 295 U.S. 247 (1935) ........ 12

Catalano v. Commissioner, 240 F.3d 842 (9th Cir. 2001) ........ 12

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) ........ 16

Commissioner v. Portland Cement Co., 450 U.S. 156 (1981) ........ 15

Commissioner v. Schleier, 515 U.S. 323 (1995) ........ 21

Commissioner v. South Tex. Lumber Co., 333 U.S. 496 (1948) ........ 15

Cottage Savings Ass'n v. Commissioner, 499 U.S. 554 (1991) ....................17

Dow Corning Corp. v. United States, 984 F.2d 416 (Fed. Cir. 1993) ....................15

Estate of Vitt v. United States, 706 F.2d 871 (8th Cir. 1983)....................13

Hanover Bank v. Commissioner, 369 U.S. 672 (1962) ....................9

Haufbauer v. United States, 297 F. Supp. 247 (S.D. Cal. 1968) ....................13, 14

Hellebrand v. Secretary of Dep't. of Health & Human Serv., 999 F.2d 1565 (Fed. Cir. 1993)....................18

Howard v. United States, 868 F. Supp. 1197 (N.D. Cal. 1994)....................10

Jewett v. Commissioner, 455 U.S. 305 (1982) ....................17

National Muffler Dealers Ass'n v. United States, 440 U.S. 472 (1979).................... 15-16

Parker v. United States, 110 F.3d 678 (9th Cir. 1997)....................13

Rothensies v. Electric Storage Battery Co., 329 U.S. 296 (1946) ....................1, 3

Stone v. White, 301 U.S. 532 (1937)....................13

Sullivan v. United States, 46 Fed. Cl. 480 (2000) ....................3

Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998).................... *passim*

United States v. Brockamp, 519 U.S. 347(1997)....................22, 23

United States v. CDMG Realty Co., 96 F.3d 706 (3d Cir. 1996) ....................6

United States v. Dalm, 494 U.S. 596 (1990) ....................12

United States v. Mead Corp., 533 U.S. 218 (2001) ....................16, 21

Women's Medical Prof. Corp. v. Voinovich, 130 F.3d 187 (6th Cir. 1997) ....................11

**MISCELLANEOUS**

2A Singer, Norman J., Sutherland Statutes and Statutory Construction, §§ 47:14, 47:16, 47:17 (6th ed. 2000).................... 4-5, 6

Field Serv. Adv. 199919021 (Feb. 14, 1999) ....................26

Field Serv. Adv. 199924016 (Mar. 17, 1999)........................................................................ *passim*

Field Serv. Adv. 200010027 (Dec. 8, 1999)............................................................................ 19-21

Field Serv. Adv. 200049012 (Aug. 25, 2000)...........................................................................10, 26

Gen. Couns. Mem. 34,784 (Feb. 22, 1972)...................................................................................14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 06-778T**
**(Hon. Francis M. Allegra)**

**ABBOTT LABORATORIES AND U.S. SUBSIDIARIES,**

**Plaintiff**

**v.**

**UNITED STATES OF AMERICA,**

**Defendant**

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 301 (1946) (emphasis added).

In this federal tax refund suit, the sole issue currently before the Court is whether the plaintiff, Abbott Laboratories and U.S. subsidiaries ("Abbott Laboratories"), filed its claims for refund in a timely manner. On that, both parties agree. Both parties also agree that Abbott Laboratories filed its claims for refund within the period set forth in section 6511 ("*Limitations*

*on credit or refund*") (the "6511 Refund Period")[1] applicable to itself and to its subsidiary, Abbott Trading Company, Inc. ("ATCI"), a foreign sales corporation ("FSC"). (Def.'s Br. at 6.) And, both parties agree that the express reference to the 6511 Refund Period in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) ("*Subsequent determination of transfer price, rental income or commission*"), as interpreted by the U.S. Tax Court in Union Carbide Corp. v. Commissioner, 110 T.C. 375, 385-386 (1998), means that neither the related party supplier nor its FSC will be entitled to "redetermine" the amount of the commissions to which the FSC may be entitled unless the 6511 Refund Period is open for each.

That should resolve the matter.

Where the parties disagree, however, is whether a "timely" claim for refund for increased deductions under section 925 ("*Transfer Pricing Rules*") means something other than timely pursuant to the 6511 Refund Period. Relying on the sixth sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which provides that "[a]ny redetermination shall affect both the FSC and the related supplier" (emphasis added), the government argues that a "timely" claim for refund means not only that the 6511 Refund Period must be open for the entity filing the refund claim, but ***also*** that the period of limitations under section 6501 ("*Limitation on assessment and collection*") (the "6501 Assessment Period") must be open for the other party, either the related supplier or the FSC, at the time a refund claim is filed. It is this disagreement that is the subject of parties' cross-motions for summary judgment.[2]

---

1 Unless otherwise indicated, all "section" references are to the Internal Revenue Code of 1986 (26 U.S.C.) (I.R.C.), as amended, or to the Treasury Regulations (26 C.F.R.) (Treas. Reg.) issued thereunder in effect during the years at issue.

2 This brief is submitted in opposition to the Motion for Summary Judgment filed by the government and in support of the Motion for Partial Summary Judgment filed by Abbott Laboratories. To the extent that Abbott Laboratories does not address the government's contentions in this reply brief, it relies on its opening brief.

As shown below and in Abbott Laboratories' opening brief, the government has rejected its legal position on the meaning of "timely" and the applicability of the 6501 Assessment Period to Temp. Treas. Reg. § 1.925(a)-1T(e)(4) since its brief in Union Carbide. More fundamentally, the government has altered "timely" from meeting a fixed target, having "a day of final settlement" as Rothensies put it, to meeting a moving one, "affected" by the government's own administrative discretion. If the government's analysis of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) is correct, then it will have gutted a "policy and theory behind the unequivocal and unwavering application of the tax code statute of limitations [that] has remained unchanged for over fifty years." Sullivan v. United States, 46 Fed. Cl. 480, 490 (2000). To put it simply: a timely claim for refund means a claim for refund filed within the taxpayer's applicable 6511 Refund Period. It does ***not*** mean a claim for refund filed within ***another*** taxpayer's 6501 Assessment Period. Nor does it mean a claim for refund filed within an ever-moving timeframe that can be unilaterally manipulated by the government.

Abbott Laboratories' motion for partial summary judgment should be granted, and the government's cross-motion should be denied.

## ARGUMENT

### I. TEMP. TREAS. REG. § 1.925(a)-1T(e)(4) REQUIRES THAT A REDETERMINATION BE FILED WITHIN THE PERIOD PRESCRIBED BY SECTION 6511; THE "SHALL AFFECT" LANGUAGE REFERS TO INCOME AND ADJUSTMENTS AND DOES NOTHING TO OVERRIDE THIS EXPLICIT RULE.

#### A. The "shall affect" language requires only that a FSC and a related supplier make corresponding adjustments with respect to FSC commissions.

Temp. Treas. Reg. § 1.925(a)-1T(e)(4) provides that:

> (4) *Subsequent determination of transfer price, rental income or commission.* [1] The FSC and its related supplier would ordinarily determine under section 925 and this section the transfer price or rental payment payable by the FSC or the commission payable to the FSC for a transaction before the FSC files its return for

> the taxable year of the transaction. [2] After the FSC has filed its return, a redetermination of those amounts by the Commissioner may only be made if specifically permitted by a Code provision or regulations under the Code. [3] Such a redetermination would include a redetermination by reason of an adjustment under section 482 and the regulations under that section or section 861 and § 1.861-8 which affect the amounts which entered into the determination. [4] In addition, a redetermination may be made by the FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511 if they determine that a different transfer pricing method may be more beneficial. [5] Also, the FSC and related supplier may redetermine the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and related supplier's profits under the transfer pricing methods. [6] Any redetermination shall affect both the FSC and the related supplier. [7] The FSC and the related suppler may not redetermine that the FSC was operating as a commission FSC rather than a buy-sell FSC, and vice versa.

The "shall affect" language in the sixth sentence of this regulation provides that a redetermination of a related supplier's FSC commission expense, or a redetermination of a FSC's commission income, should result in a correlative adjustment to the other party. If a FSC's commission income increases, so too does a related supplier's FSC commission expense. If a related supplier's FSC commission expense ***decreases***, so too does a FSC's commission income. The time requirement for doing so in either case is established by the fourth sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which explicitly incorporates the 6511 Refund Period.

Taken in context of the entire regulation, and in the context of the FSC statutory regime as a whole, the "shall affect" sentence merely sets forth the basic principle that any changes to the amount of FSC commission expenses (or transfer price in the case of a "buy-sell" FSC arrangement) paid by a related supplier should correspond with changes to the income received by a FSC. It starts with the regulations' heading, "*Subsequent determination of transfer price, rental income or commission*," which lists only items that affect the income and expenses of the related supplier and the FSC. 2A Singer, Norman J., Sutherland Statutes and Statutory Construction, § 47:14 (6th ed. 2000) ("Where headings are enacted as a part of an act, or as part

of a code . . . the headings may serve as an aid to the legislative intent.”). The regulation’s second sentence states that the Commissioner may make “a redetermination of those amounts” if permitted by the Internal Revenue Code (emphasis added). Its third sentence provides examples of the types of adjustments the Commissioner may make to the commission expense or transfer prices, which reflect only adjustments to income and expenses under sections 482 and 861. The fourth sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) provides that the FSC and the related supplier are explicitly permitted to redetermine the transfer pricing method used on the original returns to maximize the FSC benefit. The fifth sentence states that taxpayers may also redetermine the profits of the related supplier and the FSC based on changes to the “amount of foreign trading gross receipts and the amount of the costs and expenses[.]” (Emphasis added.) The seventh sentence of the regulation states that the taxpayer may not redetermine the income and expenses of the related supplier and FSC based on changing the relationship from buy-sell to commission or vice-versa.

Each sentence in the regulation then provides guidance and imposes restrictions on the ***amounts*** that may be redetermined by the Commissioner, the related party supplier, and the FSC. Given this backdrop, the sixth sentence requires a consistency in reporting of income and expenses between the FSC and the related supplier – nothing more.

The government maintains, however, that the sixth sentence does much more. In this case, the government’s view is that this sentence means that there are additional statute of limitation requirements imposed on FSCs and related suppliers when there is a redetermination. For these entities, the statute of limitations for refunds is both the 6511 Refund Period ***and*** the 6501 Assessment Period. (Def.’s Br. at 16.)

What the government has failed to acknowledge is that Temp. Treas. Reg. § 1.925(a)-1T interprets not section 6511 or section 6501 – the statutes that establish the limitations periods; instead, the temporary regulation interprets section 925.[3] Section 925 is entitled "*Transfer Pricing Rules*" and provides rules for determining the income and expenses of the FSC and related supplier. Section 925 applies equally to the FSC and the related supplier. All the rules in section 925 and Temp. Treas. Reg. § 1.925(a)-1T affect the determination of income and expense for the FSC and the related supplier. The "shall affect" language thus "fits" not by creating an alternative statute of limitations structure but rather by applying, as it does, to the income and expenses of the FSC and related supplier. It is left to section 6511 to determine the procedural timeliness of the refund claim, as the fourth sentence makes explicit.

The rule of *noscitur a sociis*, or "defining a term by its associates," is applied to sentences to determine the meaning of each sentence by the whole section. Auto-Ordnance Corp. v. United States, 822 F.2d 1566, 1571 (Fed. Cir. 1987) ("The doctrine of *noscitur a sociis* permits the Court to ascertain the meaning of ambiguous terms by reference to the terms with which they are associated in the statute or regulations."); United States v. CDMG Realty Co., 96 F.3d 706, 714 (3d Cir. 1996) ("Meaning derives from context, hence the constructional canon *noscitur a sociis*, which states that one may infer meaning by examining the surrounding words."); Singer, supra, at 47:16 ("The principle of *noscitur a sociis* applies to sections and sentences in a manner similar to the application of the doctrine of in pari materia to statutes covering the same subject matter."). Similarly, under *ejusdem generis*, a series of sentences listed together should be interpreted as being of the same kind. Singer, supra, at 47:17. In sum, "shall affect" corresponds

---

[3] See T.D. 8126, 52 Fed. Reg. 6428, 6434 (March 3, 1987) ("Authority: 26 U.S.C. 7805 * * * Section 1.925(a)-1T also issued under 26 U.S.C. 925(b)(1) and 927(d)(2)(B)"). "This document contains temporary Income Tax Regulations (26 C.F.R. Part 1) under Sections 921 and 923 through 927 of the Internal Revenue Code of 1954." Id. at 6428.

to taxpayers' duty of consistency to redetermine the income, costs, and expenses for both the FSC and the supplier with respect to transactions for which FSC redeterminations are made. "Shall affect" requires that two related parties to the transaction, the FSC and the supplier, report the same income and expense arising from their transactions, including when there are redeterminations of the amounts under Treas. Reg. § 1.925(a)-1T(e)(4). There is nothing in this "shall affect" sentence or in the regulation as a whole that says to "affect" the taxpayers means to assess a corresponding tax liability on one to offset the tax refund of the other – let alone to incorporate the 6501 Assessment Period into the unambiguous regulatory requirements.

**B. The government's interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) ignores the words that are there and interposes words that are not.**

**1. There is no statutory requirement that section 6501 be open with respect to ATCI.**

There is absolutely no reference in section 925 to section 6501 let alone any requirement that the 6501 Assessment Period be open with respect to either a FSC or a related supplier at the time a FSC commission expense redetermination is made. In fact, section 925 does not address the assessment of tax or the refund of overpayments at all. It is a provision that addresses the transfer prices between and among related suppliers and their FSCs. It creates no special statutes of limitations for the assessment of additional taxes against FSCs or related suppliers, nor do any exist anywhere in the FSC statutory provisions.

**2. There is no regulatory requirement that section 6501 be open with respect to ATCI.**

There is no requirement in Temp. Treas. Reg. § 1.925(a)-1T or elsewhere in the FSC regulations that the 6501 Assessment Period be open for either a FSC or the related supplier in order for the other to make a timely redetermination of additional FSC commission expenses. There is no reference to the 6501 Assessment Period at all – not through some "implicit"

meaning of the sixth sentence of the temporary regulation as the government suggests (Def.'s Br. at 16) or otherwise. There is one reference – and only one – in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) to the applicable limitations period for claims for refunds. That is, as should be expected when addressing claims for refund, the 6511 Refund Period.

**3. If the 6501 Assessment Period must be open, then, in effect, there is no known statute of limitations on FSC refund claims at all.**

The government maintains that for a refund claim arising from a section 925 redetermination to be timely, then it must be able to assess any corresponding tax liability to the other party (the FSC or the related party) within the 6501 Assessment Period. The government's interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) thus creates a rule that the redetermination be made sometime before the expiration of the 6501 Assessment Period for the FSC, the party whose corresponding income will be increased upon an increase on a related supplier's commissions paid to a FSC. (Def.'s Br. at 16.)

What the government does not explain, however, is how a taxpayer can comply with a Congressionally established statute of limitations that is, in fact, entirely dependent on the IRS's ability to make the assessment in the first place. The government's interpretation replaces the bright-line statutes of limitations of section 6511 and section 6501 with ambiguous and uncertain dates determined entirely by its own administrative discretion.

As a procedural matter, from the time a taxpayer's return is filed showing a payment of tax, it often takes the IRS, because of simple administrative realities, at least several weeks to assess a tax. If a taxpayer files a FSC redetermination well before the expiration of the 6511 Refund Period, but on the last day of the 6501 Assessment Period for the FSC, then the IRS may not (and will not likely) have sufficient time to assess the tax potentially due before the 6501 Assessment Period expires. The government would have to issue a notice of deficiency

immediately to the FSC, without examination, for any additional amount due. Even without the procedure of issuing a notice of deficiency before assessment, the IRS may take weeks or months to process the redetermination and assess the relevant tax on the FSC. If "shall affect" is to be interpreted the way the government suggests, making the 6501 Assessment Period a prerequisite to a refund, then there is no way for a taxpayer to know the true deadline. Would making a refund claim one month before the expiration of the 6501 Assessment Period be sufficient? Would three months? Would six months? It is not unheard of for the government to take more than a year to issue a notice of deficiency following the completion of an audit because of the complexities of final tax calculations. Taxpayers could not know how much time the government needs to make a correlative assessment of the tax to the FSC. Therefore, taxpayers would have no idea when the 6511 Refund Period relating to FSC redeterminations would expire. That is antithetical to the concept of statute of limitations, particularly in the tax realm.

This ever-moving range of acceptable dates is not merely a hypothetical. The IRS has addressed this precise question in administrative pronouncements. In Field Serv. Adv. 199924016 (Mar. 17, 1999), the IRS acknowledged that its interpretation of "shall affect" to require the 6501 Assessment Period created an uncertainty as to the timeliness of redeterminations.[4] In the FSA, the taxpayer filed its claims for refund five days ***before*** the expiration of the 6501 Assessment Period for the FSC, yet the IRS rejected the redetermination as untimely. As the FSA explains:

> The eleventh-hour filing of USCorp.'s amended return – coupled with FSC's failure to file a statement indicating additional tax due – placed the Service in the untenable position of having to issue a notice of deficiency

---

4 Although these type of pronouncements may not be used or cited as precedent under section 6110(j)(3), the Supreme Court has recognized that such writings reveal the interpretation put upon the statute by the administering agency. Hanover Bank v. Commissioner, 369 U.S. 672, 686 (1962).

> to FSC within five days (four business days) of the date of the refund claim from USCorp. We believe that the "shall affect" provision in the regulation was intended in part to prevent such a result, by placing on the FSC (which is owned or controlled by the U.S. related supplier filing the redetermination claim) the responsibility for affording the Service sufficient time to assess additional tax. As outlined above, several options were available to FSC to comply with this requirement, all of which involved minimal burden to FSC.

(Emphasis added.)

Further, in Field Serv. Adv. 200049012 (Aug. 25, 2000), the IRS explained that its interpretation of the "shall affect" language ***requires*** the FSC to extend its 6501 Assessment Period in order for the related supplier to receive a refund from a FSC redetermination. The FSA states:

> Assuming arguendo that USCorp can establish that there was an informal refund claim filed in Year 4, we believe the "shall affects" [sic] requirement of Temp. Treas. Reg. section 1.925(a)-1T(e)(4) still has not been met. The Service cannot assess additional tax against FSC1 because its period of limitation for assessment had expired. We believe that FSC1 had an affirmative duty under the "shall affects" [sic] language of the regulation to timely extend its statute of limitation for assessment, in order for it or its related supplier to gain the benefits under the regulation.

(Emphasis added.)

What the field service advice, and the government's position here, overlooks is that a taxpayer has no ability to extend the statute of limitations ***without*** the government's consent. Under section 6501(c)(4), taxpayers and the government may extend the period of limitations for assessment of tax by mutual agreement only. Taxpayers may not simply extend the statute of limitations through their own actions. I.R.C. §6501(c)(4) ("both the Secretary and the taxpayer have consented in writing" to extending the 6501 Assessment Period); Treas. Reg. § 301.6501(c)-1(d) ("The extension shall become effective when the agreement has been executed by both parties"); see, e.g., Howard v. United States, 868 F. Supp. 1197, 1202 (N.D. Cal. 1994) (signature of District Director is required). If the expiration of the 6501 Assessment Period as to

the FSC is a barrier to receiving a refund on a redetermination of FSC commissions by the related supplier, then, regardless of whether the taxpayer provides an executed consent to extend the 6501 Assessment Period, the government could bar any refund through its own inaction – a "pocket veto" perhaps. Even if the taxpayer files a redetermination before the expiration of the 6501 Assessment Period for the FSC, the government could claim it was untimely, as it did in Field Serv. Adv. 199924016 (Mar. 17, 1999), because it was not "sufficiently" before the 6501 Assessment Period expired. Or, the government could simply wait until the FSC's statute of limitations expired and then reject the claim as untimely because the related supplier's commission redetermination did not "affect" the FSC by assessing the tax. Even if the related supplier filed a refund suit, the natural delay involved in such litigation might still cause the lapse of the FSC's 6501 Assessment Period before the litigation was resolved. The government's analysis, therefore, leaves taxpayers with a statutory deadline that is liable to be pulled away at the last moment, much like Charlie Brown's football. See Women's Medical Prof. Corp. v. Voinovich, 130 F.3d 187, 218 (6th Cir. 1997) (referring to the "classic recurring football drama of Charlie Brown and Lucy in the *Peanuts* comic strip. Lucy repeatedly assures Charlie Brown that he can kick the football, if only *this time* he gets it just right. Charlie Brown keeps trying, but Lucy never fails to pull the ball away at the last moment.").

**C. If the "shall affect" language applies to tax *collection* as well as *liability*, then section 6501 is not the only remedy.**

The government's concern, and presumably the genesis of its position, arises from a desire to collect additional taxes from either the FSC or the related supplier when the other seeks a claim for refund. There are many tools available to the government to address that concern, in addition to section 6501. An inability to assess tax under section 6501 does not mean that the government is precluded from collecting additional tax relating to increases in a FSC's taxable

income. The government frequently uses the doctrines of setoff, and, to a lesser extent, equitable recoupment, to collect tax in instances where the applicable 6501 Assessment Period has expired.

For example, the doctrine of equitable recoupment allows the government to offset refunds that are otherwise due with deficiencies that the government cannot assert because the 6501 Assessment Period has expired with respect to the same transaction. Recoupment also may be used by a taxpayer to reduce a deficiency due by the amount of a refund claim with respect to the same transaction. The Ninth Circuit explained equitable recoupment in Catalano v. Commissioner, 240 F.3d 842, 844 (9th Cir. 2001).

> The doctrine of equitable recoupment seeks to avoid the unjust enrichment of either the government or the taxpayer where the statute of limitations otherwise bars relief. Kolom v. United States, 791 F.2d 762, 766-67 (9th Cir. 1986). It applies only in cases that satisfy three elements. First, a single transaction must be the taxable event to be considered in recoupment. Second, the single transaction must be subject to two taxes based upon inconsistent legal theories. Finally, the statute of limitations must bar recoupment, while either the government's asserted deficiency or the taxpayer's claim for a refund must be timely. Parker v. United States, 110 F.3d 678, 683 (9th Cir. 1997).

To utilize the doctrine of equitable recoupment, the government must show that the amounts of tax for which the period of limitations has expired and the requested refunds arise from "a single transaction, item or taxable event under two inconsistent theories." See United States v. Dalm, 494 U.S. 596, 605 n.5 (1990). In Dalm, the Supreme Court explained that:

> In sum, our decisions in Bull [v. United States, 295 U.S. 247 (1935)] and Stone [v. White, 301 U.S. 532 (1937)] stand only for the proposition that a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time barred tax claim relating to the same transaction.

Id. at 608. Recoupment is allowed only when the tax benefit claimed and the tax otherwise due arises "out of the same transaction." See also Bull v. United States, 295 U.S. 247 (1935). In this

case, the tax benefit claimed by Abbott Laboratories arises out of the same FSC transaction that resulted in FSC commission income to ATCI. In other words, because the commission expense of Abbott Laboratories relates to an increase in FSC commission income of ATCI, then the refund of Abbott Laboratories can be reduced to the extent that the tax that would otherwise been paid by ATCI can be recouped.[5]

The doctrine of equitable recoupment has been used to collect tax due by a related party when the IRS was unable to assess a tax against the party who owed the tax because of the expiration the 6501 Assessment Period. If the subject transaction involves two or more taxpayers, equitable recoupment will be available so long as a sufficient identity of interests exists such that the taxpayers should, in equity, be treated as a "single taxpayer." Parker v. United States, 110 F.3d 678, 683 (9th Cir. 1997) (quoting Stone v. White, 301 U.S. 532, 535-39 (1937)); see also Estate of Vitt v. United States, 706 F.2d 871, 875 n.3 (8th Cir. 1983) (assessing the identity of interests between an estate and the beneficiaries). In Haufbauer v. United States, 297 F. Supp. 247, 248 (S.D. Cal. 1968), an individual operated his business as a sole proprietor and incorporated during the 1959 taxable year. The individual filed his 1959 income tax return but did not claim any income or deductions from the proprietorship for the period up until the time he incorporated his business. The corporation filed a federal income tax return for the 1959 taxable year, included the income and expenses of the individual for the period prior to the incorporation of the business, and paid the taxes shown to be due thereon. The IRS assessed a

---

5 Indeed, at the IRS administrative levels, this is precisely what Abbott Laboratories agreed to do. Specifically, the LMSB Team Manager of Abbott Laboratories audit of the 1987 through 1989 periods said that "the Service and Abbott have agreed that Abbott is entitled to adjustments to its commission expenses for the relevant years, even if the statute of limitations otherwise serves as a bar against adjusting ATCI's commission income, the doctrine of equitable recoupment authorizes adjustments to refund amounts for those years to reflect the tax cost to ATCI of the additional commission income amounts." (See Ex. DD, Letter from LMSB Team Manager to the Chairman of the Joint Committee on Taxation of 7/20/04, p. 15-16.)

tax deficiency against the individual as a result, and the individual paid the assessment. At the time the IRS commenced its audit of the individual, which led to the assessment at issue in the case, the corporation's period of limitations for obtaining a refund had expired. The corporation nonetheless claimed a refund and ultimately filed suit for the refunds of the taxes paid by the individual. Id. at 248-49. The court held that the corporation was entitled to a refund. Id. at 252. Based on the doctrine of equitable recoupment, it sought a refund as soon as practicable after the deficiency determination and the payments were made with respect to the individual, even though the statute of limitations had already run against the corporation. Id. at 251. The court held that nothing inherent in the circumstances barred assertion of the theory of equitable recoupment. Id. at 252-53.[6]

At bottom, the government's real issue here is not whether Abbott Laboratories' claims for refund were timely. It is rather whether the ***amount*** that Abbott Laboratories claimed is appropriate given that the government could not, under section 6501, make a correlative assessment against ATCI. If Abbott Laboratories ***had*** done what the government claims is necessary under the temporary regulation, *i.e.* filed its claims for refund within the 6501 Assessment Period applicable to ATCI, the result would be merely that the net amount of its refund would be reduced. In other words, if, as a related supplier, Abbott Laboratories' claims for refund because of increased commission expenses were $100, and if this caused ATCI's commission income and corresponding tax liability to increase to $25, then the challenge is not to the timeliness of the related party's claims for refund. The challenge is to whether the refund should be $100 or $75 (net of the $25 in increased tax to the FSC).

---

6 The IRS has stated in Gen. Couns. Mem. 34,784 (Feb. 22, 1972), that the doctrine of equitable recoupment would support the offset of a statute-barred deficiency of a professional organization against the claim for refund of the sole shareholder of that organization.

The government nevertheless casts its argument in terms of the "timeliness" of a claim for refund under Temp. Treas. Reg. § 1.925(a)-1T(e)(4). But, the government's complaint is that the related supplier, Abbott Laboratories, will receive a perceived "windfall" by claiming the full amount of the refund, with the government being barred from assessing the offsetting increased tax on the FSC under section 6501. (Def.'s Br. at 16-18.)

The government has additional defenses to the amount of the refund that do not depend on section 6501. It thus far has chosen not to use them. Instead, the government has undermined the necessarily fixed-nature of the Code's statutes of limitations provisions by a tortured interpretation of "shall affect" in Temp. Treas. Reg. § 1.925(a)-1T(e)(4). The "amount" of the refund is not at issue in these motions, however. Section 6511 sets the only requirement as to the timeliness of Abbott Laboratories' claims for refund. And the parties agree that Abbott Laboratories met the section 6511 test for a timely claim for refund. (Def.'s Br. at 6.)

## II. IF TEMP. TREAS. REG. § 1.925(a)-1T(e)(4) MEANS WHAT THE GOVERNMENT SAYS IT MEANS, THEN IT IS INVALID.

Assuming *arguendo* that the government's analysis of "shall affect" is a reasonable interpretation of the regulation, then the question is no longer the propriety of its interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4). The problem becomes one of regulatory invalidity *per se*.

Treasury regulations "must be sustained unless unreasonable and plainly inconsistent with the revenue statutes." Commissioner v. Portland Cement Co., 450 U.S. 156, 169 (1981) (quoting Commissioner v. South Tex. Lumber Co., 333 U.S. 496, 501 (1948)); Dow Corning Corp. v. United States, 984 F.2d 416, 419 (Fed. Cir. 1993). To decide whether a treasury regulation is reasonable, courts determine "whether the regulation harmonizes with the plain

language of the statute, its origin, and its purpose." National Muffler Dealers Ass'n v. United States, 440 U.S. 472, 477 (1979).

Before even considering whether the regulation as interpreted by the government should be entitled any deference, the overriding question is whether there is any ambiguity in the temporary regulation in the first place that would justify the interposing of a section 6501 requirement into Temp. Treas. Reg. § 1.925(a)-1T(e)(4). There is not. Applying the same analytic construct to the question of regulatory interpretation of statutes –

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.

Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984); see e.g., National Muffler, 440 U.S. at 476 (interpretative regulation that comports with general-language statute may be appropriate); United States v. Mead Corp., 533 U.S. 218, 227 (2001) (agency may fill a "gap" left by Congress so long as it does so in a way not "manifestly contrary to the statute"); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-414 (1945) (administrative construction of the regulation considered "if the meaning of the words used is in doubt").

In this case, Temp. Treas. Reg. § 1.925(a)-1T(e)(4) was promulgated under section 925.[7] Section 925 is silent with respect to periods of limitation on claims for refund, with section 6511 remaining as the sole relevant provision with respect to claims for refund in the FSC area. If Temp. Treas. Reg. § 1.925(a)-1T(e)(4) acts to impose an additional limitation on claims for

[7] The Court of Federal Claims typically affords temporary regulations the same deference as permanent regulations. Bankers Trust New York Corp. v. United States, 36 Fed. Cl. 30, 34 (1996).

refund under section 6511, then, it does so wholly beyond the realm of section 925 and in a way that does not harmonize with the plain language, origin, or purpose of section 6511. To the extent that Temp. Treas. Reg. § 1.925(a)-1T(e)(4) is interpreted to impose an additional restriction on the statute of limitation on claims for refund, it is an *ultra vires* regulation – outside the scope of section 925 and thus beyond Treasury's authority.

Temp. Treas. Reg. § 1.925(a)-1T(e)(4) states unambiguously that "a redetermination may be made by the FSC and related supplier if their taxable years are still open under the statute of limitations for making claims for refund under section 6511 . . . ." It does not provide ***any*** exceptions to this ***explicit*** rule. It does not contradict this rule with subsequent examples. It does not give any indication that a date other than that provided by section 6511 shall be the last date for which a FSC redetermination can be made. It is unambiguous.

If Temp. Treas. Reg. § 1.925(a)-1T(e)(4) is interpreted in the manner the government proposes in this case, it would act to impose an additional limitation on claims for refund beyond that imposed under section 6511. In addition, it is directly contrary to section 6511, which establishes a bright-line period for taxpayers to file timely claims for refund. Section 6511, the statute that is cited explicitly in the temporary regulation, is effectively emasculated by the government's interpretation of its temporary regulation. That is regulatory invalidity.

**A. The government's interpretation of the temporary regulation is unreasonable because it leads to absurd results.**

If the court determines that there is ambiguity in a statute, the question is not whether the Treasury regulation represents the best interpretation of the statute, but whether it represents a reasonable one. See Cottage Savings Ass'n v. Commissioner, 499 U.S. 554, 560-561 (1991). As a general matter, deference is afforded to the Commissioner's interpretation of treasury regulations. Jewett v. Commissioner, 455 U.S. 305, 318 (1982). However, an interpretation of a

regulation will be unreasonable if it produces absurd results. Atlantic Mutual Ins. Co. v. Commissioner, 523 U.S. 382, 389 (1998); see also Hellebrand v. Secretary of Dep't of Health & Human Serv., 999 F.2d 1565, 1570-71 (Fed. Cir. 1993). The government's interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) does just that. It replaces a bright-line statute of limitations under sections 6501 and 6511 with an ambiguous and ever-moving spectrum of possible dates. In Field Serv. Adv. 199924016 (Mar. 17, 1999), as discussed above, the IRS asserted that filing refund claims five days prior to the expiration of the 6501 Assessment Period is not sufficient to meet the government's interpretation of the "shall affect" language. As posed above, whether five days or five months or fifteen months is sufficient would then become wholly dependent on the government and, more narrowly, on the whims of any particular IRS agent. As a matter of law, that cannot be a reasonable interpretation of any statutory or regulatory construct.

**B. The government's interpretation has no authority – it is a unilateral, unfounded determination.**

In addition to lacking any statutory or regulatory support, the government's position is unsupported by and is in fact contrary to prior or subsequent published guidance. The government's litigating position is not entitled to deference. The most recent published decision involving this temporary regulation is Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998), which was decided on June 15, 1998. Temp. Treas. Reg. § 1.925(a)-1T was published on March 2, 1987, and was modified on March 2, 2001.[8] Because the temporary regulation was modified and finalized in part after the Union Carbide decision, the government must be assumed to have agreed with the decision as the proper interpretation of this provision. If the

[8] See T.D. 8126, 52 Fed. Reg. 6428 (Mar. 3, 1987); see also T.D. 8764, 63 Fed. Reg. 10,305 (Mar. 3, 1998) and T.D. 8944, 66 Fed. Reg. 13,427 (Mar. 6, 2001).

government disagreed with the Tax Court's interpretation of the temporary regulation in Union Carbide, the government could have revised the regulation after the opinion was issued to comport with their view of how this provision should be interpreted. It did not.

After the Union Carbide decision, the government's interpretation of the temporary regulation has changed to place further restrictions on claims for refund relating to FSC redeterminations. In Union Carbide, the government stated that "the regulation does not require that the limitations period for assessing a tax under section 6501 be open with respect to" a FSC. (See Ex. BB, Respondent's Memorandum of Law in Support of Respondent's Motion for Partial Summary Judgment at 58, Union Carbide Corp. v. Commissioner, 110 T.C. 375 (1998) (No. 3501-94) ("Gov. UC Brief").) By now requiring that both the FSC and a related supplier's 6501 Assessment Period be open for a redetermination to be made, the government has now changed its interpretation of this temporary regulation.

Indeed, in a post-Union Carbide field service advice, the IRS adopted a one-sided interpretation of the "shall affect" language. In Field Serv. Adv. 200010027 (Dec. 8, 1999), the IRS initiated a redetermination whereby the related supplier's commissions were reduced (and thus its tax increased). The IRS, however, would not permit the FSC to obtain a refund resulting from its corresponding ***decrease*** in income because, the IRS reasoned, the FSC's 6511 Refund Period had by then expired. In short, the "any redetermination" language of the sixth sentence of the temporary regulation only applied to taxpayer redeterminations, as apparently does "shall affect."

> If, as is likely, the Service's examination-based adjustment reduces USCorp.'s FSC commission deduction, FSC1 will have less commission income than originally reported, and will therefore have a claim for refund of tax. Any refund claim by FSC1 will be untimely if the refund statute of limitations applicable to FSC1 has previously expired. In that case, the FSC redetermination would fail to "affect" FSC1. However, as discussed

> above, we believe that the "shall affect" requirement does not apply to FSC redeterminations initiated by the Commissioner. Thus, that requirement does ***not*** prevent the ***Commissioner*** from making the FSC redetermination contemplated in this case.

Field Serv. Adv. 200010027 (Dec. 8, 1999). (Emphasis added.)

This is just another example of the IRS reading words into the temporary regulation that are not there (such as the 6501 Assessment Period) while at the same time ignoring the words that ***are*** there ("any redetermination"). Also, contrary to its reasoning in Field Serv. Adv. 199924016 (Mar. 17, 1999), in which the IRS asserted that a taxpayer-initiated redetermination was not filed "sufficiently" before the expiration of the 6501 Assessment Period, the IRS in Field Serv. Adv. 200010027 (Dec. 8, 1999) maintains that, with respect to the 6511 Refund Period, at least ***that*** statute of limitations as to taxpayers is, indeed, a true, fixed date. So too is the 6501 Assessment Period when applied to IRS-initiated redeterminations. So long as the IRS acts before section 6501 expires, "sufficiently" before or otherwise, then it is sufficient. According to the IRS, it is of no matter whether the ***taxpayer*** will have time to act.

> In the present case, the Service's examination-based adjustment of USCorp.'s FSC commission deduction will have a correlative effect on FSC1's income. In this context, however, the ***imminent*** expiration of the assessment and refund statutes of limitation applicable to FSC1 does ***not*** prevent the Service from adjusting the income of USCorp., provided that the Service acts before the expiration of the statute of limitations applicable to USCorp. (i.e., Date B). For the reasons described above, we believe that the "dual-refund" requirement in the temporary regulation does not apply to FSC redeterminations initiated by the Commissioner.

Field Serv. Adv. 200010027 (Dec. 8, 1999) (emphasis added). Likewise, despite that consents to extend statutes of limitations require ***both*** parties to agree, and despite the IRS's ability to manipulate unilaterally the expiration of the statute of limitations and undermine a legitimate claim for refund, the IRS does not countenance such behavior by a taxpayer:

> In this case, FSC1 has refused to execute a consent to extend the period of limitations for assessment (Form 872). We do not believe that Temp.

> Treas. Reg. § 1.925(a)-1T(e)(4) should be interpreted as allowing taxpayers to limit the options available to the Service by refusing to sign consents. In any event, FSC1 can readily prevent any hardship that may result from an examination-based adjustment to its related supplier, by executing a consent to extend the period of limitations applicable to it.

Field Serv. Adv. 200010027 (Dec. 8, 1999) (emphasis added).

When analyzing the persuasiveness of a government's regulatory interpretation, its own views as to the strength of the position is relevant. See, e.g., Mead, 533 U.S. at 228 ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances, and courts have looked to the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position."). In Field Serv. Adv. 200010027 (Dec. 8, 1999), the IRS agreed that its interpretation could be found to be inconsistent with the words in the temporary regulation.

> Our conclusion that the "shall affect" requirement in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) applies only to taxpayer-initiated FSC redeterminations is subject to hazards of litigation. Although we believe that this interpretation accords with the overall structure and language of the temporary regulation, as well as the overall statutory scheme, a reviewing court might conclude that the "shall affect" requirement applies equally to Service-initiated redeterminations.

(Emphasis in original.)

Finally, the government's new interpretation of Temp. Treas. Reg. § 1.925(a)-1T is both contrary to its previous interpretation of this temporary regulation in Union Carbide and reflects opportunistic and inconsistent views of the "shall affect" language. In Commissioner v. Schleier, 515 U.S. 323, 334 n.7 (1995), the Supreme Court stated that "[i]n view of the Commissioner's differing interpretations of her own regulation, we do not accord her present litigating position any special deference."

Here, in light of the plain language of section 6511, its express reference within Temp. Treas. Reg. § 1.925(a)-1T, and the government's vacillating interpretations, this Court should not accord the government's present litigating position any special deference here. The 6501 Assessment Period has no bearing on the timeliness of a FSC redetermination, and any interpretation of the statutory or regulatory constructs that does so should be rejected.

## III. THERE IS ONLY ONE REQUIREMENT FOR FILING CLAIMS FOR REFUND – THAT THE REFUND BE TIMELY FILED WITHIN THE PERIOD OF LIMITATIONS SET FORTH IN SECTION 6511.

### A. Section 6511 is the only provision in the Code that provides the time period within which claims for refund must be made.

Section 6511(b)(1) provides that a claim for refund is timely if the taxpayer files the claim within the period of limitations established by section 6511(a). Section 6511(a), in turn, establishes that a claim for refund must be filed within three years from the time that the return was filed. If the taxpayer and the government enter into an agreement, pursuant to a Form 872, extending the period of limitations for assessment, then the period within which claims for refund may be filed is also extended; the period does not expire until six months after the end of the extended assessment period. I.R.C. § 6511(c)(1). There is no other provision in the Code that addresses the time by which claims for refunds relating to FSCs must be made.

As was discussed in detail in the opening brief, the Supreme Court in United States v. Brockamp, 519 U.S. 347, 352 (1997), held that Congress did not intend courts to read unmentioned exceptions into section 6511. The Court reasoned that section 6511 "sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." Id. at 350. The Court explained further that "Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that

Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote." Id. at 352. Thus, pursuant to Brockamp, there can be no other requirements for filing a timely claim for refund other than those explicitly set forth in section 6511. There is nothing in section 6511 (or the regulations thereunder) that makes a claim for refund "timely" so long as a correlative adjustment can be made against another party – related or otherwise – based upon the 6501 Assessment Period. And there is nothing in the regulatory "shall affect" or otherwise that changes that truism. Without an "express" altering of the applicable statute of limitations, all "implied" attempts to do so should fail.

**B. The government's position in this case is directly contrary to its analysis in Union Carbide; the legal issue – the date by which a FSC redetermination must be made – is the same.**

In this case, the government is faced with the sobering reality of its unambiguous views expressed in Union Carbide compared to its unambiguous views expressed in this case. Like a "prior inconsistent statement," this conflict may not be determinative, but it certainly casts significant doubt on the credibility of the government's analysis.

First, Union Carbide:

Excerpts from Government's *Union Carbide* Briefs

"[T]he regulation does not require that the limitations period for assessing a tax under section 6501 be open with respect to" a FSC. (See Ex. BB, Gov. UC Brief at 58.)

"[I]t does not follow that the section 6501 period of limitations on making assessment must also be the relevant time period for taxpayers to make the redetermination under section 1.925(a)-1T(e)(4). Section 1.925(a)-1T(e)(4) expressly references section 6511, not section 6501, to condition taxpayer redeterminations." (See Ex. CC, Respondent's Reply To Petitioner's Brief In Support Of Its Motion For Partial Summary Judgment at 33, Union Carbide (No. 3501-94) ("Gov. UC Reply Brief").)

"[P]etitioner assumes that taxpayers may unilaterally replace the conditions expressly prescribed in the temporary Regulation with the broader limitations period set forth in section 6501(e)(1)(A). However, . . . , neither petitioner nor this Court may rewrite the regulation to fit petitioner's needs . . . ." (See Ex. CC, Gov. UC Reply Brief at 41 (citations omitted).)

Now, here:

Excerpts from Government's *Abbott Laboratories* Brief

"Treas. Reg. § 1.925(a)-1T(e)(4) . . . clearly requires a redetermination to be made before expiration of the assessment statute [section 6501] applicable to the entity whose taxable income will increase (*i.e.*, will be affected) as a result." (Def.'s Br. at 16.)

"In short, after the FSC and its related supplier file their original returns, but before expiration of the statutes of limitations for filing tax refund claims and for assessing additional tax [section 6501] against the taxpayer whose income tax liability would be increased as a result of the redetermination, the FSC and the related supplier are permitted . . . to redetermine the amounts of foreign trading gross receipts and costs and expenses used to determine the FSC's and the related supplier's profits." (Def.'s Br. at 15.)

"But the FSC and the related supplier are *not* permitted to-- . . . [m]ake a redetermination of the amount of foreign trading gross receipts and the amount of the costs and expenses that are used to determine the FSC's and the related suppliers profits, after expiration of the period allowed for the Commissioner to assess additional tax against the party [section 6501] whose income tax liability would be increased as a result of the redetermination." (Def.'s Br. at 15-16.)

In its defense, the government attempts to distinguish Union Carbide factually from this matter. (Def.'s Br. at 21-23.) It maintains that the dispute there was not between the applicability of section 6501 as a whole, as it is here, but only as to the 6-year statute of limitations on

assessment that arises under section 6501(e)(1)(A). (Def.'s Br. at 22.) Setting aside whether a mere sub-section reference makes any difference whatsoever, the rub is that the underlying ***legal*** issue – the date by which a FSC redetermination must be made – is the same in both cases.

In Union Carbide, the issue before the Tax Court was whether the taxpayer could claim additional FSC commission expenses under Temp. Treas. Reg. § 1.925(a)-1T(e)(4). The government argued that Temp. Treas. Reg. § 1.925(a)-1T(e)(4) allows a related supplier to make FSC commission expense redeterminations only "while the periods of limitations for making claims for refund under section 6511 are open for BOTH the FSC and the related supplier . . . ." Union Carbide Corp., 110 T.C. at 385. The taxpayer argued, as the government now asserts here, that it was the 6501 Assessment Period that must be open for the FSC. Id. at 386.

The government opposed this section 6501 argument as raised by the taxpayer in Union Carbide – and won – but has now taken up this losing argument in this case. The government took the position that "the benefit sought under Temp. Treas. Reg. § 1.925(a)-1T(e)(4) is conditioned exclusively on the limitations period set forth in section 6511" and that "the regulation does not require that the limitations period for assessing a tax under section 6501 be open with respect to" a FSC. (See Ex. BB, Gov. UC Brief at 58.) The government justifies its change in position by attempting to distinguish the facts in Union Carbide from the facts in this case. (Def.'s Br. at 21-23). The government ignores, however, that in Union Carbide, as in this case, the legal issue was the date by which a FSC redetermination must be made. This date is determined by mechanical application of section 6511 and Temp. Treas. Reg. § 1.925(a)-1T(e)(4), and the mechanics of the statute and regulation do not change based on the facts of a given case.

On September 15, 1997, the government argued in Union Carbide that Temp. Treas. Reg. § 1.925(a)-1T(e)(4) did not require that section 6501 be open with respect to a FSC. On June 15, 1998, the Tax Court agreed and held in Union Carbide that it is the statute of limitations under section 6511 that must be open for ***both*** the related supplier and the FSC. Following these events, Abbott Laboratories filed its claims for refunds on June 29, 1998, while the 6511 Refund Period was open for both Abbott Laboratories and ATCI. Thereafter, the IRS began to issue advice to its agents, indicating that the section 6501 Assessment Period must be open with respect to the party in the deficiency position. See Field Serv. Adv. 199919021 (Feb. 14, 1999); Field Serv. Adv. 199924016 (Mar. 17, 1999); Field Serv. Adv. 200049012 (Aug. 25, 2000). As a result, the bright-line that was created by section 6511 to guide taxpayers in filing claims for refund, which was relied upon by Abbott Laboratories when it made the FSC redeterminations at issue in this case, has been blurred by the government's vacillation in its interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4). Taxpayers however should be able to rely on the language of the statutes, of the regulations, and of the government's interpretations of both, when conducting its affairs. On the interpretation of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), the government was right the first time: the 6501 Assessment Period is not pertinent.

## CONCLUSION

The government agrees that the claims for refunds in this matter complied with the 6511 Refund Period applicable to Abbott Laboratories. That resolves the sole issue in favor of Abbott Laboratories' Motion for Partial Summary Judgment. There remains the issue of how much refund Abbott Laboratories is entitled. The government's complaint about the 6501 Assessment Period affects the proper amount of the refund; it does not affect the timeliness of Abbott Laboratories' claim.

For the reasons set forth above, Abbott Laboratories respectfully requests that this Court grant its Motion for Partial Summary Judgment and deny the government's cross-Motion for Summary Judgment as a matter of law.

Respectfully submitted,

s/ Thomas V. M. Linguanti

Robert W. DeJoy
Attorney of Record
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 891-3993

Thomas V. M. Linguanti
Robert S. Walton
Of Counsel
BAKER & McKENZIE LLP
130 East Randolph Drive
Chicago, IL 60601
(312) 861-2623

Scott A. Knott
Of Counsel
BAKER & McKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 452-7017

Counsel for Plaintiff,
Abbott Laboratories and U.S. Subsidiaries

Dated this 20th day of July, 2007