IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-778 T
Judge Allegra

ABBOTT LABORATORIES and
U.S. SUBSIDIARIES,

Plaintiff,

v.

UNITED STATES,

Defendant.

**REPLY BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
GEORGE L. SQUIRES
Attorneys
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587
(202) 514-9440 (facsimile)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-778 T
Judge Allegra

ABBOTT LABORATORIES and
U.S. SUBSIDIARIES,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

**REPLY BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

1. Plaintiff's principal arguments fail to address the position of the United States set forth in the brief in support of our cross-motion for summary judgment, and instead attempt to refute what plaintiff repeatedly misstates our position to be

In the initial brief for the United States, we set forth our position as follows (Def. Br. 6 ):

PLAINTIFF WAS NOT PERMITTED TO MAKE A REDETERMINATION OF FSC COMMISSIONS FOR 1987, 1988 AND 1989 ON JUNE 29, 1998, BECAUSE THE ATTEMPTED REDETERMINATION DID NOT AFFECT ITS FSC, IN VIOLATION OF TEMP. TREAS. REG. § 1.925(a)-1T(e)(4)

This position is based on the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which, in its entirety, states (Def. Br. 13; Def. App. 17): "Any redetermination shall affect both the FSC and the related supplier."

The Government's position has been and is that on June 29, 1998, plaintiff, the related supplier, was not permitted to redetermine its FSC commission expense to its FSC (ATCI)

because on that date the attempted redetermination of its commission expense could not affect the commission income of ATCI. On June 29, 1998, a redetermination (increase) of plaintiff's commission expense with respect to ATCI could not affect (increase) the commission income of ATCI because on that date the IRS was proscribed by Code § 6501 from assessing against ATCI the additional tax for 1987, 1988, or 1989 that would result from the redetermination. Moreover, on that date the IRS was proscribed by § 6501 from retaining any additional tax that ATCI might voluntarily pay despite the absence of an assessment.[1/] Since plaintiff's attempt to redetermine its FSC commission expense on June 29, 1998 did not meet the requirement imposed by the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), as a matter of law plaintiff is not entitled to redetermine its FSC commission expense.

---

[1/] In our initial brief (at 17-18), we explained this point as follows:

> An upward redetermination of FSC commission expense should affect the related supplier by reducing (as a consequence of an increase in a deductible business expense item) its taxable income, resulting in an overpayment of tax which would be refunded or credited; and the same redetermination should correspondingly affect the FSC by increasing (as a consequence of an increase in an item of income) its taxable income resulting in an underpayment of tax, which would be assessed and collected. But this cannot happen if the period within which the Commissioner is permitted to assess a tax liability against the FSC has expired. This is so because the Commissioner cannot assess tax after the statute of limitations for making an assessment has expired, and the Commissioner cannot maintain a proceeding in court to collect unpaid tax that has not lawfully been assessed. § 6501(a). Any amount of any internal revenue tax that is assessed or collected after expiration of the statute of limitations for making assessments is an overpayment of tax. § 6401(a). An overpayment of tax that the IRS does not apply to an outstanding liability for tax, interest, additional amount, addition to tax, assessable penalty, or to liability for debt owed to [a] federal agency is refundable. Treas. Reg. § 301.6402-1. *Ewing v. United States*, 914 F.2d 499, 504 (4th Cir. 1990).

As we pointed out there, Abbott acknowledged this point in its initial brief (Pl. Br. 13).

In its initial brief (at 20), plaintiff demonstrated that it understands and agrees with our position on the import of the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), by stating:

> [T]he "shall affect sentence" provides that such redeterminations of FSC commission expense by a related supplier should also result in a *correlative redetermination* of commission income by the FSC.

(Emphasis added.) Instead of confronting head-on our position that the concept of "correlative redetermination" necessarily incorporates the concept of resulting additional assessable tax liability, however, plaintiff repeatedly mischaracterizes our position, substitutes a strawman, and then attacks the strawman. For example, plaintiff asserts (Pl. Rep. Br. 1) that "the sole issue currently before the Court is whether the plaintiff . . . filed its claims for refund in a timely manner," and then plaintiff compounds the mischaracterization by announcing (Pl. Rep. Br. 2, bold in original):

> Where the parties disagree . . . is whether a "timely claim for refund for increased deductions under section 925 . . . means something other than timely pursuant to the 6511 Refund Period. . . . [T]he government argues that a "timely" claim for refund means not only that the 6511 Refund Period must be open for the entity filing the refund claim, but **also** that the period of limitations under section 6501 . . . must be open for the other party, either the related supplier or the FSC, at the time a refund claim is filed.

By insisting on treating our cross-motion for summary judgment as if it were a motion to dismiss based on a failure to file a timely refund claim,[2/] plaintiff hopes to transform the gravamen of the issue in this case from what it is–a substantive prohibition of plaintiff's attempted

---

[2/] Plaintiff dramatically asserts that the Government's (purported) construction of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) guts an application of statutes of limitations that have been unchanged for fifty years. (Pl. Rep. Br. 3.)

redetermination (that plaintiff cannot surmount)--to what it is not–a statute of limitations barring the filing of a claim for refund (that plaintiff believes it can overcome).[3/]

2. Plaintiff's argument that the 6th sentence in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) requires only that the FSC and the related supplier make corresponding adjustments to items of interest and expense but not to the resulting tax liability conflicts with the clear meaning of the language of the regulation

Plaintiff argues (Pl. Rep. Br.3-7) that the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) does not prohibit a related supplier, such as plaintiff, from redetermining its FSC commission expense (thereby increasing its deductible FSC commission expense and creating an overpayment of federal income tax subject to refund) after it and its FSC filed their original federal income tax returns *where the redetermination does not affect the FSC* (*i.e.*, where the redetermination does not increase FSC's taxable income creating a collectible increase in the FSC's federal income tax liability). More simply, plaintiff argues that as long as it files a tax refund claim within the 6511 statute of limitations based on redetermining upward its FSC commission expense, the IRS must give it a tax refund even if there is no correlative increase to the income of its FSC and no increase in the FSC's federal income tax liability.

Plaintiff's argument fails to harmonize with the language of the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), which states: "Any redetermination *shall affect* both the FSC and the related supplier." Indeed, plaintiff's argument conflicts with the language of the

[3/] Plaintiff later reveals its understanding that the "timeliness" of Abbott's refund claims is not the issue in the suit (at 14): "At bottom, the government's real issue here is not whether Abbott Laboratories' claims for refund were timely." The succeeding sentence, however, again mistates defendant's position. We do *not*, as plaintiff's suggest, believe that the issue is the proper amount of the refund claimed by Abbott. Our position is that there was no redetermination, so there can be no refund. Therefore, both the timeliness and the amount of the claimed refund are irrelevant.

regulation by denying meaning to the verb "*affect*" in the 6th sentence. The verb to *affect* denotes having an impact on something. According to Webster's Third International Dictionary (1966), "*affect*" is a transitive verb meaning (emphasis added):

> a: *to produce an effect* (as of disease) *upon* <a condition ~ing the heart>
> b(1): to produce a material influence upon or alteration in <rainfall ~s plant growth> <areas to be ~ed by highway construction> . . .

The *effect produced* by the redetermination of an increase by a related supplier in FSC commission expense is a reduction in its tax liability; and the correlative *effect produced* by the redetermination of an increase by a FSC in commission income is an increase in its tax liability. Thus, after the original tax returns of the related supplier and the FSC have been filed, the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) permits a related supplier to increase an FSC commission expense and reduce its tax liability if, and only if, a correlative change to the FSC's commission income and increase in its tax liability results.

3. Plaintiff's argument that the 6th sentence in Temp. Treas. Reg. § 1.925(a)-1T(e)(4) requires only that the FSC and the related supplier make corresponding adjustments to items of interest and expense but not to the resulting tax liability vitiates an important protection for the public fisc against whipsaw.

Plaintiff's argument (Pl. Rep. Br. 3-7) that the Commissioner has a duty to allow plaintiff's timely-filed refund claim based on redetermination of FSC commission expense, even if the IRS is precluded by statute from assessing additional federal income tax on the FSC's increase in commission income, commensurate with its related supplier's increase in deductible FSC commission expense, vitiates an important protection for the public fisc against whipsaw.[4/]

---

[4/] As already noted, plaintiff implicitly acknowledged this function of sentence 6, in its initial brief (at 20):

(continued...)

Plaintiff's position would eliminate the 6th sentence whipsaw protection from Temp. Treas. Reg. § 1.925(a)-1T(e)(4), and with it the only purpose that sentence ever had. Thus, plaintiff's interpretation of sentence 6 would effectively read that sentence out of the regulation altogether, as it would then have no discernable purpose.[5/]

As the Court is aware, to the extent possible, words in a statute or regulation should not be ignored. *Cf.*, 2A SINGER, NORMAN J., STATUTES AND STATUTORY CONSTRUCTION ¶ 47:37 ("Words may be eliminated only when such action is consistent with the legislative intent or meaning. However, it must be certain that the legislature could not possibly have intended the words to be in the statute, and that the rejection of them serves merely as a correction of careless language and actually gives the true intention of the legislature.")[6/]

4. Plaintiff's argument that this Court should read sentence 6 out of the regulation because the doctrine of equitable recoupment would permit the Government to collect the additional tax against the FSC's that is unable to be assessed begs the question before the Court and asks the Court to create a new adminstrative rule

---

[4/](...continued)
[T]he "shall affect sentence" provides that such redeterminations of FSC commission expense by a related supplier should also result in a correlative redetermination of commission income by the FSC.

[5/] Plaintiff incorrectly cites four IRS field service advisory letters (Pl. Rep. Br. 10, 19-21, 26) as somehow interpreting sentence 6 in a way that would give taxpayers no way to predict, for purposes of filing refund claims by the related supplier, whether the IRS would assess the additional tax against the FSC before the assessment statute for the FSC would expire. The notion is bizarre, because the ability to control that issue is in the hands of the taxpayers, who need only enter into an agreement to extend the statute of limitations on assessment. There is absolutely no evidence that the IRS would refuse (as plaintiff suggests) to enter into such an agreement.

[6/] In this regard, we note the inconsistency in plaintiff's argument (at 7-8) that sentence 6 cannot relate to the assessment period of the FSC because Code § 925 contains no such reference. Section 925 similarly contains no reference to the period for filing refund claims, yet that concept is incorporated in the 4th sentence of the regulation, and the government's interpretation of the 4th sentence was adopted by the Tax Court in *Union Carbide.*

Plaintiff contends (Pl. Rep. Br. 11-15) that this Court should read sentence 6 out of the regulation because the doctrine of equitable recoupment would permit the Government to collect the additional tax resulting from increases in a FSC's taxable income, despite expiration of the period permitted by § 6501 for assessing that tax. In so doing, plaintiff is asking this Court to exceed its authority by effectively rewriting the regulation and creating a new administrative rule (a rule that would also be inconsistent with the position of the Secretary).

In support of its argument, plaintiff points out (at 13, n.5) that the revenue agent who conducted the administrative audit in this case informally agreed with plaintiff's representatives, as a settlement position, to offset the unassessable additional tax of ATCI against the proposed refund contemplated to Abbott, based on equitable recoupment. As reflected in ¶ 62 of the complaint and defendant's first amended answer, however, the proposed settlement was returned unapproved by the Joint Committee on Taxation.

Plaintiff also attempts (at 14, n.6) to create an impression that a concept of administrative equitable recoupment has been adopted by the Secretary, citing GCM 34,784 (Feb. 22, 1972), 1972 WL 32553 (IRS GCM). The GCM encapsulated a proposed revenue ruling that would have permitted an administrative offset based on equitable recoupment, in the circumstances of the fact situation presented there (not, incidentally, analogous to the situation in this case). Plaintiff neglects to mention, however, that the IRS's Chief Counsel wrote to the Assistant Commissioner (Technical), requesting that the ruling not be published, noting that Treasury's Tax Legislative Counsel had "expressed concern over publication of a proposed revenue ruling based upon G.C.M. 34,784 . . . ." 1972 WL 32553 at 4. The Chief Counsel's memorandum went on to say (*id.* at 4-5):

> We agree that the ruling should not be published . . . because the ruling would not be helpful in the disposition of other cases.
>
> Only after all the surrounding facts and circumstances of each particular case are scrutinized and the equities weighed can it be determined whether application of the doctrine of equitable recoupment is warranted or feasible. Furthermore, application of the doctrine of equitable recoupment is, strictly speaking, ultimately a litigation rather than an administrative matter since, in the final analysis, the doctrine is essentially a defense to be employed in a judicial proceeding.
>
> Accordingly, we recommend that the proposed ruling not be published.

In any event, as plaintiff (possibly inadvertently) acknowledges, quoting (at 12) *Catalano v. Commissioner*, 240 F.3d 842, 844 (9th Cir. 2001):

> The doctrine of equitable recoupment seeks to avoid the unjust enrichment of either the government or the taxpayer where the statute of limitations otherwise bars relief.

In the case currently before this Court, there has been no unjust enrichment to either party, since plaintiff's FSC has not paid additional income tax on increased FSC commission income commensurate with plaintiff's claim that it is entitled to redetermine its FSC commission expenses for the years in suit, and plaintiff has not received a refund of tax based on that claim. Thus, the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4) has done its job of preventing whipsaw and consequential unjust enrichment.

4. Contrary to plaintiff's argument (Pl. Rep. Br. 23-26), the Government's position in this case is not contrary to its position and analysis in *Union Carbide*

In *Union Carbide Corp. v. Commissioner*, 110 T.C. 375 (1998), the Tax Court agreed with the Commissioner that petitioner, a related supplier, was not entitled to redetermine its FSC commission expenses since it had raised this claim following expiration of the period permitted by § 6511 for its FSC to file a tax refund claim. That requirement was imposed by the 4th sentence–not the 6th sentence--of Temp. Treas. Reg. § 1.925(a)-1T(e)(4).

The taxpayer in *Union Carbide* attempted to circumvent the 4th sentence's requirement that the refund claim periods be open for both the related supplier and the FSC by contending that the only relevant statute of limitations was § 6501 (which in that case was still open). The Commissioner's brief simply responded to that argument by pointing out that § 6501 does not trump § 6511.

We do not disagree that the words "section 6501" do not appear in the regulation. But the noting of that fact in *Union Carbide* does not conflict with any position the Government has taken or is taking in this case. Our position in this case has been and is that, by virtue of the 6th sentence of Temp. Treas. Reg. § 1.925(a)-1T(e)(4), Abbott Laboratories is not permitted to redetermine its FSC commission expenses unless the redetermination will affect both the related supplier and the FSC. The fact that the FSC cannot be affected by Abbott's proposed redetermination, by way of an increase in its FSC commission income made after expiration of the period permitted by § 6501 for assessing tax against the FSC, does not create a conflict between what was written in the Commissioner's brief in *Union Carbide* and the Government's briefs in this case.[7/]

---

[7/] We think that plaintiff's harping on the Commissioner's supposed position on § 6501 in the *Union Carbide* brief is explained by the following statement in plaintiff's reply brief (at 3):

> [T]he government has rejected its legal position on the meaning of "timely" and the applicability of the 6501 Assessment Period to Temp. Treas. Reg. § 1.925(a)-1T(e)(4) since its brief in Union Carbide. More fundamentally, the government has altered "timely" from meeting a fixed target, having "a day of final settlement" as Rothensies put it, to meeting a moving one, "affected" by the government's own administrative discretion. . . . To put it simply: a timely claim for refund means a claim for refund filed within the taxpayer's applicable 6511 Refund Period.

In other words, plaintiff is attempting to import the actual issue in *Union Carbide*–whether both (continued...)

CONCLUSION

For the reasons stated herein and in our opening brief, the United States is entitled to judgment as a matter of law, plaintiff's motion for partial summary judgment should be denied, and the complaint should be dismissed with prejudice, with costs to the United States.

Respectfully submitted,

August 24, 2007

s/George L. Squires
GEORGE L. SQUIRES
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6587

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief, Court of Federal Claims Section

August 24, 2007

s/Mary M. Abate
Of Counsel

[7/](...continued)
the related supplier's and the FSC's periods under § 6511 for filing refund claims had to be open–into this case. As we have shown, the issue here is not the issue presented in *Union Carbide.*