IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 06-778 T
(Judge Allegra)

ABBOTT LABORATORIES AND U.S. SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S SECOND SUPPLEMENTAL BRIEF,
PURSUANT TO THE COURT'S ORDER OF AUGUST 26, 2008**

The Court of Appeals for the Federal Circuit observed, in *Schuler Industries, Inc. v. United States*, 109 F.3d 753, 754-55 (Fed. Cir. 1997) (citations omitted):

> We first determine whether [the Treasury Regulation at issue] is legislative or interpretive in character because that determination affects our standard of review. . . . While an interpretive regulation is issued under the general authority vested in the Secretary of the Treasury by I.R.C. § 7805, a legislative regulation is issued under a specific grant of congressional rulemaking authority and has "legislative effect." . . . To ascertain the source of authority for a particular regulation, we examine the statutory language and the regulation itself.

In *Schuler*, the relevant statute directed the Secretary to issue regulations providing guidance as to which items of income and deductions were or were not to be taken into account in determining alternative minimum tax under Code § 56(g)(4). The Federal Circuit held that such a regulation is *legislative* because "Congress specifically directed the Secretary to 'prescribe initial regulations,' and, thus, through [the enacting legislation], Congress expressly delegated

specific authority to the Secretary to promulgate the regulation at issue." *Id.* at 755. Regarding legislative regulations, the Supreme Court stated, in *Chevron U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984) (footnotes omitted):

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

Under the *Schuler* standard, Treasury Regulation § 1.925(a)-1T(e)(4) was a legislative regulation during the years in suit (1987-1989). Section 1.925(a)-1T(e)(4) was promulgated under both the general rulemaking authority of § 7805(a) and the specific grant of authority in § 925(b)(1) (*see* 52 Fed. Reg. 6428, 6434 (March 3, 1987) (codified at 26 C.F.R. Ch. I, Subch. A, Pt. 1)). Section 925(b) directs:

> The Secretary shall prescribe regulations setting forth–
> (1) rules which are consistent with the rules set forth in subsection (a)[[1]] for the application of this section in the case of commissions, rentals, and other income, and
> (2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a FSC is seeking to establish or maintain a market for export property.

Thus, as with the legislative regulation in *Schuler*, "Congress expressly delegated specific authority to the Secretary to promulgate [§ 1.925(a)-1T,] the regulation at issue."[2]

On the same day that § 1.925(a)-1T was adopted, however, a Notice of Proposed

---

[1]Subsection (a) of § 925 sets out general rules for determination of a FSC's taxable income on the sale of export property to the FSC by a related entity. Section 1.925(a)-1T provides rules for, *inter alia*, the taxation of commission FSCs and related suppliers.

[2]The fact that § 1.925(a)-1T was a temporary regulation during the suit years does not alter this fact. Until final regulations are adopted, temporary Treasury Regulations have the same force and effect as final regulations. *Cinema '84 v. Commissioner*, 294 F.3d 432, 438 (2d Cir. 2002).

Rulemaking, soliciting comment, was issued, incorporating by reference § 1.925(a)-1T as, also, the proposed final regulation. 52 Fed. Reg. 6467 (March 3, 1987). The Notice's Preamble stated: "Although this document is a notice of a proposed rulemaking which solicits public comment, the Internal Revenue Service has concluded that the regulations proposed herein are interpretative and that the notice and public procedure requirements of 5 U.S.C. 553 do not apply." *Ibid.* In light of this statement, this Court might conclude that § 1.925(a)-1T does not readily fit within one of the two categories identified in *Schuler*.[3] If so, § 1.925(a)-1T is entitled to deference regardless.

A similarly anomalous situation was addressed by the Supreme Court in *Boeing Co. v. United States*, 537 U.S. 437 (2003). There, Code § 994(b) (governing the DISC regime) directed:

> The Secretary shall prescribe regulations setting forth–
>
> (1) rules which are consistent with the rules set forth in subsection (a)[[4]] for the application of this section in the case of commissions, rentals, and other income, and
>
> (2) rules for the allocation of expenditures in computing combined taxable income under subsection (a)(2) in those cases where a DISC is seeking to establish or maintain a market for export property.

The issue centered on the proper allocation of research and development expenditures ("R & D") between the DISC and its related supplier, in determining their "combined taxable income"

---

[3]The taxpayer in *Schuler* argued that the regulation at issue there was an *interpretive* regulation, regardless of the statutory mandate, because the statute directed that the regulations be written for "guidance." The Federal Circuit rejected the argument in part because "nothing in the regulation itself either suggests that the Secretary viewed his statutory authority as limited to interpretation, or detracts from the legislative character of the regulation." 109 F.3d at 755.

[4]Similarly to Code § 925(a) (governing FSCs), subsection (a) of § 994 set out general rules for determination of a DISC's taxable income on the sale of export property to the DISC by a related entity. In identical language to that of § 925(b), § 994(b) directed that the Secretary promulgate consistent regulations in the areas described.

("CTI"). The Court noted that the statute neither defined CTI not mentioned R & D, but "Congress did grant the Secretary express authority to prescribe regulations for determining the proper allocation of expenditures in comprising CTI in [§ 994(b)(1), (2)]." *Id.* at 447-48. The regulation in question, however, had been promulgated only under Code §7805, and codified in the regulations under Code § 861, not § 994. The Court nonetheless concluded that this was immaterial, because (*id.* at 448, 451)–

> [e]ven if we regard the challenged regulation as interpretive because it was promulgated under § 7805(a)'s general rulemaking grant rather than pursuant to a specific grant of authority, we must still treat the regulation with deference. . . .

This approach is consistent with the Court's approach to deference to regulations in *United States v. Mead Corp.*, 533 U.S. 218, 226-67 (2001), where it held that "administrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority generally to make rules carrying the force of law, and the agency interpretation claiming deference was promulgated in the exercise of that authority." Applying *Mead*, many courts have held that interpretive regulations issued under § 7805 are entitled to *Chevron* deference. *See*, *e.g.*, *Swallows Holding*, *Ltd. v. Commissioner*, 515 F.3d 162, 168-70 (3d Cir. 2008); *Hospital Corp. of America & Subsidiaries v. Commissioner*, 348 F.3d 136, 140-41 (6th Cir. 2003); *cf. United States v. Correll*, 389 U.S. 299, 307 (§ 7805 imposes a "congressional mandate" to prescribe rules and regulations).[5]

Under *Chevron*, a reviewing court first looks at whether Congress has clearly spoken to

---

[5]In *Hospital Corp.*, the Court afforded *Chevron* deference to a temporary regulation, which, like § 1.925(a)-1T, was issued prior to public comment, and simultaneously released for public comment as a proposed final regulation. *See Hospital Corp.*, 348 F.3d at 1348-40; *see also Mead*, 533 U.S. at 230-31 (observing that *Chevron* deference may be accorded in some circumstances even when notice and comment is absent).

the issue at hand. If not, then the court must defer to the regulation, provided it is "based on a permissible construction of the statute." *Nat'l Customs Brokers & Forw'ders Ass'n of Am. v. United States.*, 59 F.3d 1219, 1221 (Fed. Cir. 1995). Congress has not spoken to the issue in this case; it expressly delegated authority in § 925 to the Secretary to provide rules for commission and rental FSCs. Further, § 925 is silent on whether, and, if so, to what extent, a related supplier and FSC can *redetermine* a transfer price. The time limitation on transfer price redeterminations imposed by the sixth sentence of § 1.925(a)-1T(e)(4) is a "permissible construction" of § 925, because, properly understood, it furthers Congress's intent in enacting the FSC provisions by prohibiting abusive redeterminations, as plaintiff and its FSC attempted in this case.[6]

---

[6]We note that Code § 7805(e)(2) limits the effective period of temporary regulations to three years after issuance. That limit does not apply to§ 1.925(a)-1T, however, because it was originally issued on March 3, 1987, prior to the effective date of § 7805(e). *See* Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, 102 Stat. 3342, § 6232(b) (1998) (effective for regulations issued on or after November 20, 1988).

Section 1.925(a)-1T(e)(4), at issue here, is still authoritative, as a temporary regulation. *See* 26 C.F.R. § 1.925(a)-1(c)(8), adopted as a final regulation in 2001, and first proposed as a temporary regulation in 1998 (63 Fed. Reg. 10305 (March 3, 1998)). These proposed 1998 amendments to § 1.925(a)-1T (and the 2001 final amendments) amended -1T(c)(8)(i), and removed the reference to "grouping method" redeterminations in sentence 4 (not at issue here) of subsection -1T(e)(4). These changes in essence disallow redeterminations of the grouping method (if any) used to calculate the related supplier's and FSC's transfer, commission, or rental price for taxable years after 1998, and require such redeterminations for taxable years before 1998 to be made on or before the due date (with extensions) of the FSC's first U.S. income tax return for a taxable period ending after December 31, 1997. *See* 63 Fed. Reg. at 10306-07.

The 1998 temporary regulation was effective as of March 3, 1998, and hence applied to the attempted commission price redetermination of plaintiff and its FSC on June 29, 1998. Its only relevance to the issue in this case is that it did not make any other change to § 1.925(a)-1T(e)(4), and the final regulation explicitly made clear that all of the undisturbed requirements of § 1.925(a)-1T(e)(4) (including the still-viable *sixth* sentence, at issue here) must still be met. *See* Treas. Reg. § 1.925(a)-1(c)(8); 66 Fed. Reg. 13427, 13428 (March 6, 2001).

Respectfully submitted,

September 10, 2008

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
TELEPHONE (202) 307-6508
FACSIMILE (202) 514-9440
Joseph.B.Syverson@usdoj.gov

NATHAN J. HOCHMAN
Assistant Attorney General
STEVEN I. FRAHM
Acting Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate
Of Counsel

September 10, 2008